# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3895

_____

| | | |
|---|---|---|
| Team Nursing Services, Inc., | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Evangelical Lutheran Good | * | |
| Samaritan Society, doing business as | * | |
| University Good Samaritan Center, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 16, 2005
Filed: January 9, 2006

_____

Before MELLOY, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Team Nursing appeals the district court's grant of summary judgment in favor of Good Samaritan. Because the contract at issue unambiguously granted Good Samaritan discretion to accept a nurse and Good Samaritan exercised its discretion in a reasonable manner, we affirm.

## I.    BACKGROUND

Good Samaritan was established in 1922, as a religious nonprofit corporation designed to provide integrated care and senior housing.  On October 20, 1999, Good Samaritan executed a contract for Team Nursing to recruit foreign registered nurses to work in Good Samaritan's nursing homes in the United States.  Under the contract, Good Samaritan would review background information; conduct telephone interviews; extend conditional job offers to qualified candidates; and provide business documentation to Team Nursing.  Team Nursing's responsibilities included recruiting nurses; compiling documents related to credentials, exams, and work histories; and helping the nurses complete documents needed for Immigration and Naturalization Services (INS) approval.  Good Samaritan was responsible for the INS application fees for each nurse, the costs of telephone interviews, and any of its own travel costs.  Team Nursing was to pay its own costs associated with advertising, screening, and selection of prospective employees.  Good Samaritan agreed to pay Team Nursing a fee for each nurse, with the initial payment billed and due five days after each nurse arrived ready for work in the United States.

The contract gave Good Samaritan final discretion whether to hire an individual nurse or any nurses at all:

> Society Final Discretion
>
> The Society [Good Samaritan] reserves the right to exercise final discretion on whether to accept an individual nurse as an employee, and the Society [Good Samaritan] is not required to accept a specific number of nurses under this contract.

App. to Appellant's Br. at 16.  The contract also contained a termination clause which allowed either party to terminate the contract with thirty days notice, with or without good cause, and set forth the effects of termination:

Duration of Agreement

The Agreement of the parties shall become effective on date signed and may be terminated by either party on 30 days written notice. In the event of any termination by either party, all applications already submitted to the INS shall be considered valid and carried in accordance with the terms of this agreement.

App. to Appellant's Br. at 15-16.

Good Samaritan hired over thirty foreign nurses recruited by Team Nursing and paid approximately $300,000 in recruiting fees. Generally, the time period between the initial I-140 Immigrant Petition for Alien Worker and when the nurse actually received a visa to come to the United States lasted a year and a half or more. On October 22, 2002, Good Samaritan wrote the United States Department of Justice, withdrawing the I-140 petitions pending for thirty-four foreign nurses recruited by Team Nursing. Good Samaritan informed Team Nursing of the withdrawn petitions the same day. On November 18, 2002, Good Samaritan notified Team Nursing of its intent to terminate the contract effective December 18, 2002. Good Samaritan also indicated that it expected the nurses in its employ to complete the amount of time in the agreement.

Team Nursing filed suit, seeking damages in the amount of the recruiting fees for the nurses whose I-140 petitions had been withdrawn by Good Samaritan. Team Nursing claimed that Good Samaritan breached the contract by refusing to pay Team Nursing for its services as promised in the agreement. After discovery had closed, Team Nursing moved to amend its pretrial order for the purpose of amending its complaint to allege a breach of the covenant of good faith and fair dealing, but the

court[1] denied the motion. The court[2] then granted summary judgment in favor of Good Samaritan, and Team Nursing appeals.

## II.    DISCUSSION

We review de novo the district court's grant of summary judgment and view the evidence in the light most favorable to Team Nursing. Lester E. Cox Med. Ctr., Springfield, Mo. v. Huntsman, 408 F.3d 989, 992 (8th Cir. 2005).

### A.    Ambiguity

This contract is governed by Minnesota law, which states that the trial court determines, as a matter of law, whether contract terms are ambiguous. Barry v. Barry, 78 F.3d 375, 382 (8th Cir. 1996). Terms are ambiguous if they are "reasonably susceptible to more than one interpretation." Id. Courts must consider each word's context and "give all terms their plain, ordinary meaning so as to effect the intent of the parties." Id.

In this case, the alleged ambiguity arises from a potential conflict between the "Society Final Discretion" clause and the "Duration of Agreement" clause. Team Nursing contends that once Good Samaritan submitted the I-140 petitions, it exercised its final discretion and the applications had to be carried forward to completion. Team Nursing supports this argument by pointing to the letter accompanying the I-140 petitions, which stated that Good Samaritan intended to employ the nurses. We disagree.

---

[1]The Honorable Jonathan Lebedoff, Chief United States Magistrate Judge for the District of Minnesota.

[2]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

Under the "Society Final Discretion" clause, Good Samaritan had the final discretion whether to accept any particular nurse as an employee and was not required to hire any specific number of nurses. The act of revoking the I-140 letters was an exercise of this discretion. In the contract, the nurses are referred to as "prospective employees" with "conditional job offer[s]." Further, Good Samaritan was not responsible for meeting any nurse's immigration requirements and was not obligated to pay any fees until the nurse arrived with all qualifications to start work. Good Samaritan's final discretionary act could not have been the submission of the I-140 letters to the INS, because a second letter verifying existing employment was required when the nurses interviewed at the United States Embassy. This second verification letter was required because of the time lapse between when the I-140 petition was filed and when the applicant qualified for an Embassy interview. Good Samaritan's discretion whether to accept a nurse or any nurses was not contractually limited in scope or time. Therefore, Good Samaritan had the discretion not to accept a nurse as an employee until he or she arrived in the United States, qualified to work.

The "Duration of Agreement" clause does not conflict with the "Society Final Discretion" clause. The "Duration of Agreement" recites that upon termination "all applications already submitted to the INS shall be considered valid and carried in accordance with the terms of this agreement." Because this clause refers to the contract as a whole, this clause is subordinate to the rest of the contract and cannot be read so as to frustrate dominant provisions of the contract. Egner v. States Realty Co., 26 N.W.2d 464, 470 (Minn. 1947). The effect of Good Samaritan's withdrawing the I-140 letters was to exercise its discretion, as allowed by the "Society Final Discretion" clause. After exercising its discretion not to accept the thirty-four nurses as employees, no pending INS applications remained. Good Samaritan then terminated the contract.

Team Nursing argues that all terms in a contract must have an effect and that allowing Good Samaritan to reject all pending applicants would render the "Duration

of Agreement" clause meaningless. However, the "Duration of Agreement" clause specifically states that all pending applications will be carried in accordance with the contract, and the contract gives Good Samaritan final discretion whether to accept an applicant. The "Duration of Agreement" clause would have had effect if there had been pending applications at the time the contract was terminated. Even so, Good Samaritan would still have had discretion to reject those pending applicants "in accordance with the terms of this agreement." Good Samaritan chose to reject all applicants and then terminate the contract: powers afforded to it under the contract. The contingency of pending applications did not occur. The "Duration of Agreement" clause was not ineffective; it was merely moot. Good Samaritan's final discretion was not limited by the "Duration of Agreement" clause and was exercised when Good Samaritan withdrew the I-140 petitions.

## B.    Good Faith and Fair Dealing

Though the district court blocked Team Nursing's efforts to amend its complaint to allege a violation of the covenant of good faith and fair dealing, Team Nursing contends that this claim need not have been specifically pled. Team Nursing argues that the covenant is impliedly included in every contract. In re: Hennepin County 1986 Recycling Bond Litig., 540 N.W.2d 494, 502 (Minn. 1995). The implied covenant of good faith and fair dealing requires that no party to a contract "unjustifiably hinder the other party's performance of the contract." Id. (quotations and citations omitted).

Accepting Team Nursing's contention, the covenant of good faith and fair dealing has not been breached, because Good Samaritan had discretion whether to accept any nurse and was not required to hire any particular number of nurses. Team Nursing agreed to the terms of the contract, and the contract gave Good Samaritan the discretion to accept any individual nurse as an employee. In contrast, the implied covenant of good faith and fair dealing governs the parties' performance and prohibits

a party from failing to perform for the purpose of thwarting the other party's rights under the contract. Coddon v. Youngkrantz, 562 N.W.2d 39, 43 (Minn. Ct. App. 1997) (holding that since implied covenant of good faith and fair dealing is part of contract, vendor of property in contract for deed cannot refuse payments in an attempt to create a default); In re: Hennepin County, 540 N.W.2d at 502 (holding that county could not fail to seek a renewed letter of credit for the purpose of causing a condition precedent to fail, allowing county to redeem bonds prematurely without paying the requisite premium); Zobel & Dahl Constr. v. Crotty, 356 N.W.2d 42, 44-45 (Minn. 1984) (finding that homeowner breached implied condition that each party will not unjustifiably hinder the other from performing by refusing to make final payment or to give contractor the industry-standard "punch list" of defects to repair before final installment payment is made). Here, Good Samaritan had an explicit contractual right to "exercise final discretion on whether to accept an individual nurse as an employee," and its exercise of this contractually-defined right does not violate the implied covenant of good faith and fair dealing unless exercised unreasonably.

Team Nursing does not challenge the objective reasonableness of Good Samaritan's exercise of discretion. See, e.g., Advantage Consulting Group, Ltd. v. ADT Sec. Sys., Inc., 306 F.3d 582, 589 (8th Cir. 2002) (clarifying that "a party's 'satisfaction' will be determined under an objectively-reasonable-man standard, and not on the basis of the contracting party's own subjective standard"). Even if it had, Good Samaritan offered ample reasons for rejecting the nurses, such as the high turnover rate for the foreign nurses, exorbitant costs, the unpredictable timing of nurses arriving in the United States, and the fact that the nurses were paid at the same rate as registered nurses before passing the required exam. Good Samaritan did not breach the implied covenant of good faith and fair dealing by exercising its contractual rights in a reasonable manner.

## III.   CONCLUSION

The contract unambiguously gave Good Samaritan final discretion whether to accept a nurse as an employee, and Good Samaritan did not violate the covenant of good faith and fair dealing by exercising this right.  We therefore affirm the district court's grant of summary judgment.

_____