# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2520

_____

Kevin Bores; Jennifer Huber;    *
Christopher McCormick; Blue Earth   *
Enterprises, Inc.; Mid America Pizza,  *
LLC; Rising Dough, Inc.; RJ Inc.;   *
Galleons Inc.; J Triple T, Inc.; FBN,  *
Inc.; Try Our pizza Inc.; M&M Pizza,  *  Appeal from the United States
                                *  District Court for the District of
        Plaintiffs - Appellees,     *  Minnesota.
                                *
       v.                        *
                                *
Domino's Pizza, LLC,        *
                                *
        Defendant - Appellant.    *

_____

Submitted: March 12, 2008
Filed: June 20, 2008

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

Domino's Pizza, LLC, appeals the district court's grant of summary judgment holding Domino's may not require franchisees to purchase Domino's custom-designed, integrated computer system. We reverse.

# I

Domino's is a national pizza franchise. The plaintiffs are owners of various Domino's franchises located in Minnesota, Maine, Missouri, and Ohio. When they became Domino's franchisees, the plaintiffs executed Domino's Standard Franchise Agreement. Of relevance here is Section 8.2, which provides:

> *We will provide you with specifications for* pizza, other authorized food and beverage preparation, dispensing, storage and display equipment, delivery and related motor vehicles, other equipment, fixtures, furniture, *computer hardware and software*, exterior and interior signs and decorating required by the Store. *You may purchase items meeting our specifications from any source*.

(Emphasis supplied).

The present dispute concerns Domino's PULSE system, a "proprietary, comprehensive computer system created specifically for Domino's Pizza stores" which "allows better communication, service, . . . information gathering and reporting, and coordination" among Domino's United States stores. Domino's created PULSE in the 1990s and began installing it in corporate stores in 2001. It has since advised all franchisees they must purchase and install PULSE by June 30, 2008. PULSE computer hardware can only be purchased from IBM, and PULSE computer software can only be purchased from Domino's.

Plaintiffs argue Domino's mandated the purchase and use of its PULSE system solely to generate additional revenue from franchisees. Plaintiffs have refused to install PULSE, arguing under Section 8.2 of the franchise agreements Domino's must provide the "specifications" for PULSE and allow them to purchase computer hardware and software meeting those specifications "from any source," not solely from Domino's.

The dispute over PULSE culminated in plaintiffs filing this litigation, alleging: 1) breach of contract; 2) fraud; 3) negligent misrepresentation; 4) breach of the implied covenant of good faith and fair dealing; 5) violation of the Minnesota Franchise Act; and 6) promissory estoppel. Domino's counterclaimed for breach of contract and indemnification and sought declaratory relief allowing it to require franchisees to purchase and install the PULSE system.

Plaintiffs moved for summary judgment and Domino's moved for dismissal of plaintiffs' claims. The district court granted Domino's motion on five of plaintiffs' six claims, but granted plaintiffs' motion for summary judgment on the claim for breach of contract.[1] The court concluded the franchise agreements did not allow Domino's to require franchisees to purchase the PULSE system. On appeal, Domino's argues the district court misinterpreted the plain language of the franchise agreements.

II

We review a grant of summary judgment de novo, applying the same standard as the district court. Jaurequi v. Carter Mfg. Co., Inc., 173 F.3d 1076, 1085 (8th Cir. 1999). Summary judgment is proper if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When ruling on a summary judgment motion, a court must view the evidence "in the light most favorable to the nonmoving party." Dush v. Appleton Elec. Co., 124 F.3d 957, 962-63 (8th Cir. 1997). However, a "nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial." F.D.I.C. v. Bell, 106 F.3d 258, 263 (8th Cir. 1997).

---

[1]Plaintiffs have not cross-appealed the dismissal of their other claims and the only claim before us on appeal is the contract claim.

This diversity action is governed by state substantive law, <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938), and we apply the law of Minnesota, Maine, Missouri, and Ohio, respectively, to the breach of contract claims.

The interpretation of an unambiguous contract is a matter for the court. <u>Travertine Corp. v. Lexington-Silverwood</u>, 683 N.W.2d 267, 271 (Minn. 2004); <u>Hawkes v. Commercial Union Ins. Co.</u>, 764 A.2d 258, 266-67 (Me. 2001); <u>J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club</u>, 491 S.W.2d 261, 264 (Mo. 1973); <u>Saunders v. Mortensen</u>, 801 N.E.2d 452, 454 (Ohio 2004). When interpreting a contract, the goal is to divine the parties' intent.  <u>Travertine</u>, 683 N.W.2d at 271; <u>Apgar v. Commercial Union Ins. Co.</u>, 683 A.2d 497, 500 (Me. 1996); <u>J.E. Hathman</u>, 491 S.W.2d at 264; <u>Saunders</u>, 801 N.E.2d at 454.  If a contract is unambiguous, the parties' intent is manifest from the terms of the contract itself.  <u>Travertine</u>, 683 N.W.2d at 271; <u>Apgar</u>, 683 A.2d at 500-01; <u>J.E. Hathman</u>, 491 S.W.2d at 264; <u>Saunders</u>, 801 N.E.2d at 454.  The district court found the language of the franchise agreements unambiguous.  On appeal, the parties agree but advance different interpretations of Section 8.2.  <u>See</u> <u>Bank Midwest v. Lipetzky</u>, 674 N.W.2d 176, 179 (Minn. 2004) (holding mere disagreement over the interpretation of contract language does not render the contract ambiguous); <u>Moody v. State Liquor & Lottery Comm.</u>, 843 A.2d 43, 49 (Me. 2004) ("Language is ambiguous when 'it is *reasonably* susceptible to different interpretations.'") (emphasis supplied); <u>Robbins v. McDonnell Douglas Corp.</u>, 27 S.W.3d 491, 496 (Mo. Ct. App. 2000) ("An ambiguity does not exist merely because the parties dispute the meaning of the contract."); <u>Amdee, Inc. v. Jacobson</u>, No. 52800, 1987 WL 17914, *4 (Ohio Ct. App. October 1, 1987) (unpublished) ("In deciding whether more than one reasonable interpretation renders the language ambiguous, the court rules whether each proposed interpretation is reasonable.").

Section 8.2 provides, in relevant part: "*We will provide you with specifications for . . . computer hardware and software . . . . You may purchase items meeting our specifications from any source*."  (Emphasis supplied).  The district court, relying on

a partial dictionary definition of "specification," concluded Domino's was required to provide franchisees with the information necessary to guide them through the process of constructing a system comparable to Domino's PULSE computer system, and could not specify they purchase the PULSE system. The district court held specifications referred to the component parts and technology necessary to construct a product, e.g., a computer system and computer software program, and not to a finished product, i.e., Domino's PULSE system. In other words, the franchise agreement only allowed Domino's to mandate a comparable computer system, not a specific computer system.

In addition, the district court noted Section 8.2 permitted franchisees to obtain the specified computer hardware and software "from any source." It concluded "from any source" only had meaning if the specified items could be obtained from *multiple* sources. Because the computer hardware was only available from IBM, and the PULSE software only from Domino's, the district court held the agreement had to be interpreted as allowing franchisees the ability to construct a comparable system using materials and technology available from multiple sources.

Domino's argues the district court relied on an unduly restrictive interpretation of specification. According to Domino's, specification refers not only to a plan or written description embodying the manner and process of making, constructing, compounding, and using an item, but also to "[a] single item or article that has been specified." Applying this broader definition, Domino's argues the franchise agreements allow it to specify a computer system capable of performing specific functions *or* to specify a single computer system – the PULSE system. Domino's further argues its interpretation of specification is not affected by language allowing franchisees to obtain specified items "from any source." It contends any source does not mean the items have to be available from multiple sources. Instead, the American Heritage Dictionary defines "any" to include "[o]ne, some, every, or all without specification." American Heritage Dictionary 81 (4th ed. 2000). Thus, any source can mean only one source.

We conclude the definition of specification applied by the district court was unnecessarily narrow. The American Heritage Dictionary defines specification as:

> 1. The act of specifying. 2.a. specifications. A detailed exact statement of particulars, especially a statement prescribing materials, dimensions, and quality of work for something to be built, installed, or manufactured. b. A single item or article that has been specified. 3. An exact written description of an invention by an applicant for a patent.

Id. at 1669.

> The Webster's Unabridged Dictionary definition of specification includes:

> n. 1. the act of specifying. 2. Usually, specifications. a detailed description or assessment of requirements, dimensions, materials, etc., as of a proposed building, machine, bridge, etc. 3. a particular item, aspect, calculation, etc., in such a description. 4. something specified, as in a bill of particulars; a specified particular, item, or article.

Webster's Unabridged Dictionary 1832 (2d ed. 1997).

> Webster's Third International Dictionary defines specification, in part, as:

> 4: a detailed, precise, explicit presentation . . . of something or a plan or proposal for something: as a: a written statement containing a minute description or enumeration of particulars . . . : *also*: a single article, item, or particular or an allegation of a specific act . . . .

Webster's Third International Dictionary 2187 (1986) (emphasis in original).

Plaintiffs contend specification, as used in the franchise agreements, can only mean the list of the parts and technology from which Domino's PULSE system is constructed. Applying the above definitions, however, it is apparent the plain and ordinary meaning of specification includes both a list of the component parts

necessary to construct or describe an item, as well as a single, finished, product. For example, specification encompasses a detailed description of the particular characteristics desired in an automobile or simply identifying a particular make and model; in each instance specifications are provided. Thus, we conclude the plaintiffs' arguments unreasonably focus on only one of the commonly understood definitions of specification; nothing in the franchise agreements limits the meaning of specification to a single usage. Applying the commonly understood definition of specification, the agreements permit Domino's to specify a computer system with comparable capabilities or the PULSE system.

We further conclude Section 8.2's language permitting franchisees to obtain the specified computer software and hardware "from any source" does not change the meaning of specification. Plaintiffs argue "any" means multiple sources, and interpreting specification to include items only available from one source would render "from any source" meaningless. We disagree. From any source is necessarily limited to available sources, and, as Domino's points out, the definition of "any" includes "one, some, every or all." American Heritage Dictionary 81 (4th ed. 2000). Thus, the franchise agreements merely allow plaintiffs to purchase the specified computer system – PULSE – from any available sources, be they one or many. Further, plaintiffs' assertion they are not permitted to purchase the PULSE system from multiple sources is factually unsupported. Domino's is the most likely source from which the PULSE system could be obtained, but not necessarily the only source. For example, the franchise agreement would not preclude franchisees from obtaining a used PULSE system from another franchisee.

## III

Accordingly, we reverse the district court's grant of summary judgment in favor of plaintiffs and remand with instructions to grant Domino's motion to dismiss and enter judgment in its favor.

_____