# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3052

_____

Richard R. Henning,                    *
                                       *
            Appellant,                 *
                                       *   Appeal from the United States
      v.                               *   District Court for the
                                       *   District of Minnesota.
Mainstreet Bank,                       *
                                       *
            Appellee.                  *

_____

Submitted: May 16, 2008
Filed: August 22, 2008

_____

Before WOLLMAN, MURPHY, and SMITH, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Richard Henning contends that the mortgage he granted to Mainstreet Bank on his home as collateral for business loans should be released under the terms of their agreement. The district court[1] affirmed the bankruptcy court's[2] grant of summary judgment to Mainstreet, and Henning now appeals. We affirm.

_____

[1]The Honorable Michael J. Davis, now Chief Judge, United States District Court for the District of Minnesota.

[2]The Honorable Nancy C. Dreher, Chief Judge, United States Bankruptcy Court for the District of Minnesota.

I.

Henning was a principal and officer in several businesses that borrowed money from Mainstreet. In July 2003, Henning, those businesses, and Mainstreet consolidated and restructured the debt into a single amended and restated promissory note for $600,000 pursuant to the terms of an assumption agreement and consent of guarantors ("assumption agreement"). Dick Henning Landscape, LLC, was the primary debtor, and Henning personally guaranteed the debt. Henning presented no evidence that disputes Mainstreet's assertion that the promissory note was secured by personal and real property valued at $700,000. The real property consisted of Henning's home, which secured $250,000 of the note. The assumption agreement provided that Mainstreet would release its mortgage on the home once $200,000 of the promissory note had been paid off. The relevant portion of the assumption agreement provides:

> 7. **Guarantors Not Released**. The Guarantor hereby consents to and understands and acknowledges that the transfer of the Assets and the assumption by the Purchaser of the obligations under the Financing documents shall not release the Guarantor from any personal liability under the Guaranty Documents and that such Guaranty Documents shall remain in full force and effect.
>
> *Notwithstanding the foregoing*, the Lender hereby agrees that when $200,000 of the outstanding principal balance of the Amended and Restated Note has been *paid*, Lender upon written request from the Guarantor, will agree to release the Mortgage. Furthermore, the Lender hereby agrees that when an additional $200,000 of the outstanding principal balance of the Amended and Restated Note has been paid, Lender upon written request from the Guarantor, will agree to release the Guarantor from his Guaranty.

App. 77 (italics added).

In July 2004, Mainstreet filed proceedings against Henning and Dick Henning Landscaping, alleging default under the terms of the promissory note. Dick Henning Landscaping apparently never made a timely payment, and it ceased making payments altogether in October 2004. At that time, $124,061.10 had been paid toward the principal. In 2005, Mainstreet recovered approximately $196,000 by enforcing its lien rights in certain equipment and accounts. In October 2005, Henning filed for Chapter 7 bankruptcy, including an adversary proceeding against Mainstreet. Henning and Mainstreet filed cross-motions for summary judgment on whether Mainstreet was required to release its mortgage on Henning's home. The amount of outstanding principal currently remaining on the promissory note is about $280,000, with Henning's home being the only collateral remaining to secure the loan.

## II.

Summary judgment is appropriate when, viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. City of Jefferson City, Mo. v. Cingular Wireless, LLC, 531 F.3d 595, 605 (8th Cir. 2008). On appeal from a district court's review of a bankruptcy proceeding, we sit as a second court of review, reviewing the bankruptcy court's conclusions of law *de novo* and any factual findings for clear error. In re Miller, 276 F.3d 424, 428 (8th Cir. 2002).

Under Minnesota law, the determination of whether a contract is ambiguous and the interpretation of an unambiguous contract are matters of law for the court to decide. Bores v. Domino's Pizza, LLC, 530 F.3d 671, 674 (8th Cir. 2008); Team Nursing Servs., Inc. v. Evangelical Lutheran Good Samaritan Soc'y, 433 F.3d 637, 640 (8th Cir. 2006). A contract is ambiguous if the terms are reasonably susceptible to multiple interpretations. Team Nursing Serv., 433 F.3d at 640. The purpose of interpreting a contract is to effectuate the parties' intent, which is derived from the

plain and ordinary meaning of the contract's terms in their context. <u>Bores</u>, 530 F.3d at 674; <u>Team Nursing Servs.</u>, 433 F.3d at 640.

Henning argues that the word "paid," as it is used in paragraph 7 of the assumption agreement, should be interpreted as meaning that the mortgage must be released if Mainstreet receives $200,000 towards the debt from any source. He bases this interpretation primarily on the language, "Notwithstanding the foregoing," in paragraph 7, which he asserts requires us to ignore all of the rights and obligations of the parties and all provisions in the assumption agreement that precede that language.

The term "paid" is not reasonably susceptible to Henning's definition, and thus the contract is not ambiguous. Article 3 of the Uniform Commercial Code provides that "an instrument is paid to the extent payment is made by or on behalf of a party obliged to pay the instrument, and to a person entitled to enforce the instrument." Minn. Stat. § 336.3-602(a). This is a natural and ordinary meaning of "paid," especially in the present context, where the payments contemplated in the assumption agreement are owed on a promissory note. The bankruptcy court adopted a dictionary definition of "pay," meaning "to satisfy (someone) for services rendered or property delivered: discharge an obligation to." <u>Henning v. Mainstreet Bank (In re Henning)</u>, ADV 06-4108 (BKY 05-49574), at 5 (Bankr. D. Minn. Nov. 22, 2006) (citing <u>Webster's Third International Dictionary (Unabridged)</u>, 1659 (1976)). Although less explicit, this definition also implies that a payment must be made voluntarily in connection with the receipt of a benefit to the source of that benefit. Dick Henning Landscaping, an obligor on the promissory note, made principal payments of $124,061.10 to Mainstreet, which is entitled to enforce the instrument. No one disputes that this amount was "paid" within the meaning of paragraph 7. The purchasers who paid $140,000 for equipment at the lien foreclosure sale were not obligors on the promissory note and such purchase cannot be considered a payment made on the obligor's behalf. Thus, the $140,000 cannot be considered as having been "paid" within the meaning of paragraph 7. Nor was the $56,000 "paid" when

Mainstreet exercised its lien rights in certain of Dick Henning Landscaping's accounts. Although the money came from the debtor's accounts, Mainstreet recovered the money through legal action; the transfer was not "made by or on behalf of" Dick Henning Landscaping.

Henning's definition of "paid" is contrary to the parties' clear intention that Mainstreet be made a secured creditor. The assumption agreement covers multiple facets of Mainstreet's becoming and remaining a secured creditor. The first part of paragraph 7 titled "Guarantors Not Released" makes it clear that the assumption agreement does not release Henning from his liability. The second part provides that despite Henning's continued liability, Mainstreet will release the mortgage when the principal has been reduced by $200,000, i.e., when the other collateral can fully secure the remaining debt. If the principal is reduced only because other collateral is liquidated, the continued existence of the mortgage is necessary to fully secure the remainder of the loan. Requiring the release of the mortgage upon Mainstreet's liquidation of other collateral worth more than $200,000 would render Mainstreet's security interest in the home and its status as a fully secured creditor dependent upon the order in which Mainstreet exercised its rights as a secured creditor and would thwart the parties' clear intention that Mainstreet remain fully secured for the duration of the loan.

## III.

Henning argued for the first time on his appeal to the district court that he should be equitably excused from his obligation as a guarantor. "Ordinarily, we do not consider an argument raised for the first time on appeal. We consider a newly raised argument only if it is purely legal and requires no additional factual development, or if a manifest injustice would otherwise result." Orr v. Wal-Mart Stores, Inc., 297 F.3d 720, 725 (8th Cir. 2002). Based on the record before us, we cannot say that a manifest injustice would result from holding Henning liable on his

promise made for his benefit.  Accordingly, we decline, as did the district court, to address this argument.

IV.

In light of our holding, we need not address the bankruptcy court's alternative holding that Henning's breach of the promissory note excused Mainstreet from any obligation to release the mortgage.

The judgment is affirmed.

_____