# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3442

_____

Wells Fargo Home Mortgage, Inc.,　　*
now known as Wells Fargo Bank　　　*
Minnesota, National Association,　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　　Appellant,　　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　　v.　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　District of Minnesota.
Dwight R.J. Lindquist, in his　　　*
capacity as Chapter 7 Trustee　　　*
of the bankruptcy estate of　　　　*
Dean Harold Westlund,　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　　Appellee.　　　　　*

_____

Submitted: October 22, 2009
Filed:  January 11, 2010
_____

Before RILEY, SMITH and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

On October 14, 2005, Dean Harold Westlund ("the debtor") filed a petition for Chapter 7 bankruptcy relief.  Dwight R.J. Lindquist, the Chapter 7 trustee, filed suit against Wells Fargo Home Mortgage, Inc. under 11 U.S.C. § 547 to avoid the pre-

petition transfer of a mortgage from the debtor to Wells Fargo. The bankruptcy court[1] granted summary judgment in favor of the trustee and ordered Wells Fargo to pay the bankruptcy estate $190,808.71. The district court[2] affirmed the bankruptcy court's decision, and Wells Fargo now appeals. For the following reasons, we affirm.

## I. BACKGROUND

On May 16, 2003, Wells Fargo loaned the debtor $196,000. In return, the debtor executed a promissory note payable to Wells Fargo for the principal amount of the loan and granted Wells Fargo a mortgage on his home in Hennepin County, Minnesota. On October 14, 2005, the debtor filed a petition for Chapter 7 bankruptcy relief, claiming $400 in non-exempt assets, $6,600 in unsecured priority claims and $37,833 in unsecured nonpriority claims. Although Wells Fargo never recorded the mortgage, the debtor erroneously listed Wells Fargo as a secured creditor. On the date he filed for bankruptcy, the unpaid principal balance on the note was $190,808.71.

Soon after the debtor filed his bankruptcy petition, Wells Fargo sold a bundle of 334 mortgage loans to EMC Mortgage Corporation.[3] In this transaction, Wells Fargo "assigned, sold and transferred" its rights under the debtor's note and mortgage to EMC. The bankruptcy court granted the debtor a discharge on March 7, 2006, and closed the case on March 20, 2006. EMC recorded the mortgage on or about October

[1]The Honorable Nancy C. Dreher, Chief Judge, United States Bankruptcy Court for the District of Minnesota.

[2]The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota.

[3]The parties disagree about the precise date on which Wells Fargo sold the bundle of mortgages to EMC. It is unnecessary for us to determine the precise date of the transaction because it is undisputed that the sale was completed after the debtor's October 14, 2005 bankruptcy filing and before the bankruptcy court closed the case.

11, 2006. The trustee subsequently learned that Wells Fargo had not recorded the mortgage before the debtor filed his bankruptcy petition, meaning that Wells Fargo should have been listed as an unsecured creditor in the petition. At the trustee's request, the bankruptcy court reopened the case on January 29, 2007. *See* 11 U.S.C. § 350(b).

On April 17, 2007, the trustee filed a complaint against Wells Fargo in bankruptcy court, seeking to avoid the debtor's grant of the mortgage to Wells Fargo. The trustee argued that 11 U.S.C. § 547(e)(2)(C) deems the transfer of the mortgage to Wells Fargo to have occurred immediately before the debtor's October 14, 2005 bankruptcy filing because Wells Fargo did not perfect its security interest in the property by recording the mortgage before the debtor filed for bankruptcy. *See* 11 U.S.C. § 547(e)(1)(A); Minn. Stat. § 507.34. According to the trustee, the pre-petition transfer of the mortgage from the debtor to Wells Fargo should be avoided as a preference under 11 U.S.C. § 547(b). As a result, the trustee claimed that Wells Fargo should pay the value of the mortgage to the debtor's bankruptcy estate under 11 U.S.C. § 550(a). Alternatively, the trustee sought to avoid and recover Wells Fargo's interest in the mortgage under 11 U.S.C. §§ 544(a) and 550(a). The trustee moved for summary judgment, and Wells Fargo filed a cross-motion for summary judgment.

The bankruptcy court granted the trustee's motion for summary judgment. It held that the transfer of the mortgage occurred immediately before the debtor's October 14, 2005 bankruptcy filing by operation of § 547(e)(2)(C). The court therefore avoided the transfer of the mortgage to Wells Fargo as a preferential transfer under § 547(b) and ordered Wells Fargo to pay the debtor's bankruptcy estate $190,808.71. As a result, the bankruptcy court dismissed the trustee's § 544(a) claim as moot. The district court affirmed, and Wells Fargo now appeals.

## II.    DISCUSSION

"On appeal from a district court's review of a bankruptcy proceeding, we sit as a second court of review, reviewing the bankruptcy court's conclusions of law *de novo* and any factual findings for clear error." *Henning v. Mainstreet Bank*, 538 F.3d 975, 978 (8th Cir. 2008). "Summary judgment is appropriate when, viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id.*

Wells Fargo argues that the bankruptcy court erred in avoiding the transfer under 11 U.S.C. § 547(b). In the alternative, Wells Fargo argues that the bankruptcy court erred in holding that the trustee could recover the value of the mortgage from Wells Fargo under 11 U.S.C. § 550(a) and in calculating the value of the mortgage to be $190,808.71.

"Under the Bankruptcy Code's preference avoidance section, 11 U.S.C. § 547, the trustee is permitted to recover, with certain exceptions, transfers of property made by the debtor within 90 days before the date the bankruptcy petition was filed." *Barnhill v. Johnson*, 503 U.S. 393, 394 (1992). "This rule 'is intended to discourage creditors from racing to dismember a debtor sliding into bankruptcy and to promote equality of distribution to creditors in bankruptcy.'" *Lindquist v. Dorholt* (*In re Dorholt, Inc.*), 224 F.3d 871, 873 (8th Cir. 2000) (quoting *Jones Truck Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund* (*In re Jones Truck Lines, Inc.*), 130 F.3d 323, 326 (8th Cir. 1997)).

"Title 11 U.S.C. § 547(b) requires that in order for a transfer to be subject to avoidance as a preference, (1) there must be a transfer of an interest of the debtor in property, (2) on account of an antecedent debt, (3) to or for the benefit of a creditor, (4) made while the debtor was insolvent, (5) within 90 days prior to the commencement of the bankruptcy case, (6) that left the creditor better off than it

would have been if the transfer had not been made and the creditor asserted its claim in a Chapter 7 liquidation." *Buckley v. Jeld-Wen, Inc.* (*In re Interior Wood Prods. Co.*), 986 F.2d 228, 230 (8th Cir. 1993). The trustee must establish each of these elements by a preponderance of the evidence. *Stingley v. AlliedSignal, Inc.* (*In re Libby Int'l, Inc.*), 247 B.R. 463, 466 (8th Cir. BAP 2000).

As an initial matter, Wells Fargo argues that the preferential "transfer" in this case is EMC's post-petition recording of the mortgage, rather than the debtor's pre-petition transfer of the mortgage to Wells Fargo. The bankruptcy court and the district court, however, rejected this argument and concluded that the debtor's grant of the mortgage to Wells Fargo is the transfer at issue under § 547(b). This "transfer" of the mortgage is deemed to have occurred immediately before the debtor's October 14, 2005 bankruptcy filing by operation of § 547(e)(2)(C) because Wells Fargo failed to record the mortgage. *See* 11 U.S.C. § 547(e)(2)(C) (2004) ("[A] transfer is made . . . immediately before the date of the filing of the [bankruptcy] petition, if such transfer is not perfected at the later date of—(i) the commencement of the case; or (ii) 10 days after such transfer takes effect between the transferor and the transferee.").[4] Wells Fargo, however, asserts that the district court's opinion "makes clear" that the § 547(b) preferential transfer inquiry in this case focuses on EMC's post-petition recording of the mortgage. According to Wells Fargo, the transfer could not have been preferential under § 547(b) because it occurred after the debtor filed his bankruptcy petition.

In making this argument, Wells Fargo misrepresents the district court's opinion. Wells Fargo quotes the district court's statement that "EMC was the beneficiary and transferee of the actual later transfer of the Mortgage" and asserts that the court adopted its view that the transfer at issue is the post-petition recording of the

---

[4]The debtor filed his bankruptcy petition on October 14, 2005, three days prior to the date the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") went into effect.

mortgage. This quote supports Wells Fargo's position only when taken out of context. In its entirety, the sentence clarifies that the district court is not focusing on EMC's recording of the mortgage: "While Wells Fargo is correct that EMC was the beneficiary of and transferee of the actual later transfer of the Mortgage, under the statute, *the Court is addressing a statutorily created transfer from the Debtor to Wells Fargo that occurred in October 2005*." (Emphasis added.) At another point in the opinion, after discussing Wells Fargo's post-petition transfer argument, the district court stated, "The Court rejects Wells Fargo's argument," and went on to analyze the pre-petition transfer of the mortgage from the debtor to Wells Fargo under § 547(b).

We note that the recording of a mortgage can also be considered a transfer of an interest in property, *see Bergquist v. Fid. Mortgage Decisions Corp.* (*In re Alexander*), 219 B.R. 255, 258 (Bankr. D. Minn. 1998), but there can be no doubt in this case that the trustee filed suit under § 547(b) to avoid the debtor's pre-petition transfer of the mortgage to Wells Fargo. Accordingly, we reject Wells Fargo's argument that EMC's post-petition recording is the subject of the § 547(b) preferential transfer inquiry and conclude that the relevant preferential transfer in this case is the debtor's transfer of the mortgage to Wells Fargo. We now examine whether the trustee has established that the transfer of the mortgage to Wells Fargo meets the requirements of a preferential transfer under § 547(b). *See In re Interior Wood Prods. Co.*, 986 F.2d at 230.

There is no dispute that the debtor's grant of a mortgage to Wells Fargo was a "transfer of an interest of the debtor in property," that the transfer was "made while the debtor was insolvent," or that § 547(e)(2)(C) deems the transfer of the mortgage to have occurred "within 90 days before the date of the filing of the [bankruptcy] petition." *See* 11 U.S.C. § 547(b).

Wells Fargo argues that the transfer was not "to or for the benefit of a creditor" and was not "for or on account of an antecedent debt owed by the debtor before such transfer was made," *see id.*, because § 547(e)(2)(C) is a "timing" provision that does not "fictionally alter the date of perfection." Because Wells Fargo failed to perfect the mortgage before the debtor filed his bankruptcy petition, however, the date of perfection is irrelevant for the purposes of the § 547(b) preferential transfer inquiry. Wells Fargo loaned the debtor $196,000 on May 16, 2003, in exchange for a promissory note in that amount. The debtor also granted Wells Fargo a mortgage on his home as security for the note. However, because Wells Fargo failed to record the mortgage, § 547(e)(2)(C) deems the transfer of the mortgage to have occurred immediately before the debtor filed his October 14, 2005 bankruptcy petition. Thus, the debtor incurred the debt on May 16, 2003, but did not transfer the security interest in his home on account of that debt until immediately before the October 14, 2005 bankruptcy filing. Under these circumstances, Wells Fargo was already a creditor of the debtor when it received the mortgage from the debtor, so the mortgage was transferred "to or for the benefit of a creditor." *See id.* Moreover, the transfer of the mortgage was "for or on account of an antecedent debt owed by the debtor before such transfer was made," *see id.*, because the debtor is deemed to have transferred the mortgage more than two years after incurring the debt on the note. *See In re Dorholt, Inc.*, 224 F.3d at 873-74 (holding that a loan was antecedent to the transfer of a security interest when the security interest was not perfected within the time period provided by § 547(e)).

Wells Fargo also argues that the transfer did not enable it "to receive more than [it] would receive" in a hypothetical liquidation, *see* 11 U.S.C. § 547(b), because the transfer of the mortgage from the debtor to Wells Fargo did not diminish the bankruptcy estate, *see Zachman Homes, Inc. v. Oredson* (*In re Zachman Homes, Inc.*), 40 B.R. 171, 173 (Bankr. D. Minn. 1984) (holding that a "transfer which diminishes or depletes the bankrupt's estate may be seen as a transfer which enables a creditor to receive more than other creditors of equal status"). In his Chapter 7 bankruptcy

petition, the debtor listed $400 in non-exempt assets, $6,600 in unsecured priority claims and $37,833 in unsecured nonpriority claims. We do not necessarily disagree with Wells Fargo's position that, in this context, a creditor holding an unsecured note would not normally benefit from obtaining an unrecorded mortgage from the debtor on the eve of the debtor's bankruptcy filing because its claim would remain unsecured and its recovery would not change. In this case, however, the debtor transferred the mortgage to Wells Fargo and then erroneously listed Wells Fargo as a secured creditor, allowing Wells Fargo to retain—and sell to EMC—the mortgage it received from the debtor without objection by the trustee. But for the transfer of the mortgage to Wells Fargo, the bankruptcy estate would have included an interest in the house equal to the value of the mortgage, which the trustee would have been able to liquidate.[5] With the proceeds, the trustee would have satisfied the unsecured priority claims first, meaning that unsecured creditors with nonpriority claims, such as Wells Fargo, necessarily would have received less than the full value of their claims. In this case, however, Wells Fargo obtained in the transfer a mortgage on the debtor's property equal to the full value of its claim, depriving the bankruptcy estate of an interest in the house equal to the value of the mortgage. Thus, the trustee was unable to satisfy the unsecured priority claims or distribute any money to the creditors with unsecured nonpriority claims. Accordingly, on this record, we conclude that the transfer of the mortgage to Wells Fargo diminished the bankruptcy estate, and we agree with the bankruptcy court's conclusion that the transfer enabled Wells Fargo to "receive more than [it] would receive" in a hypothetical liquidation. *See* 11 U.S.C. § 547(b).

---

[5]Wells Fargo has not challenged the trustee's position that the mortgage was "an interest of the debtor in property," *see* 11 U.S.C. § 547(b), which the Supreme Court has defined as "property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings," *see Begier v. IRS*, 496 U.S. 53, 58-59 & n.3 (1990). Moreover, neither party has claimed that the debtor's real property was subject to a homestead exemption or any other encumbrance that would have prevented the trustee from liquidating an interest in the property equal to the value of the mortgage.

We hold that the pre-petition transfer of the mortgage to Wells Fargo was preferential under § 547(b) and that the trustee was entitled to judgment as a matter of law. Accordingly, the bankruptcy court properly avoided the transfer of the mortgage to Wells Fargo under § 547(b).

Wells Fargo argues that the trustee brought suit against the wrong party because it should have sought to recover the actual mortgage from EMC. This argument lacks merit. When a transfer is avoided under § 547(b), "the trustee may recover, for the benefit of the estate" the property transferred, or its value, from "the initial transferee of such transfer or the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1). Alternatively, the trustee may recover from "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a)(2). Thus, by providing that the trustee can seek recovery from the initial transferee or an immediate transferee of the initial transferee, § 550(a) "allows the trustee to pick his named defendant[]." *See Leonard v. First Commercial Mortgage Co.* (*In re Circuit Alliance, Inc.*), 228 B.R. 225, 236 (Bankr. D. Minn. 1998). Accordingly, the bankruptcy court did not err in holding that the trustee may recover from Wells Fargo the value of the mortgage it received from the debtor pursuant to § 550(a)(1).

Wells Fargo also argues that the bankruptcy court erred in ordering it to pay $190,808.71 to the debtor's bankruptcy estate. It asserts that the record creates a genuine issue of material fact about the value of the mortgage because the record contains no evidence of how much EMC paid Wells Fargo for the mortgage. We reject this argument. The trustee presented evidence that the debtor owed Wells Fargo $190,808.71 on the date he filed for bankruptcy. According to the trustee, this amount represents the value of the mortgage. Wells Fargo argues that the price EMC paid it for the mortgage represents the value of the mortgage. Although we agree that the amount EMC paid Wells Fargo would be relevant to the value of the mortgage, Wells Fargo has failed to provide admissible evidence about the transaction. Instead, Wells Fargo's attorney submitted an affidavit stating that Wells Fargo has been unable to

determine how much EMC paid for the mortgage because it was sold as part of a bundle of mortgages. The district court properly ignored this affidavit because the attorney did not assert personal knowledge of the sworn facts, a prerequisite for consideration of the affidavit under Federal Rule of Civil Procedure 56(e). Because Wells Fargo failed to present any evidence about the value of the mortgage, we conclude that Wells Fargo has failed to establish a genuine issue of material fact about the value of the mortgage.

We also reject Wells Fargo's argument that the bankruptcy court's order has the effect of requiring it to pay for the mortgage twice. Wells Fargo loaned the debtor $196,000. But for the transfer of the mortgage, Wells Fargo would have had an unsecured nonpriority claim at the time the debtor filed for bankruptcy, which would have entitled it to payment of only a portion of its claim in a hypothetical liquidation. Because the debtor erroneously listed Wells Fargo as a secured creditor, the debtor's transfer of a mortgage to Wells Fargo immediately prior to filing gave Wells Fargo an interest in property equal to the full amount of its unsecured claim. Wells Fargo then sold the mortgage to EMC. The bankruptcy court held that the transfer of the mortgage from the debtor to Wells Fargo was preferential, so it avoided the transfer and ordered Wells Fargo to pay the bankruptcy estate the value of the mortgage. In other words, Wells Fargo was not entitled to received the mortgage as a preference, so it must reimburse the bankruptcy estate for receiving—and selling—an interest of property that should have remained part of the estate. *See Seaver v. Mortgage Elec. Registration Sys.* (*In re Schwartz*), 383 B.R. 119, 125 (8th Cir. BAP 2008) ("The purpose of [11 U.S.C. § 550(a)] is to restore the debtor's financial condition to the state it would have been had the avoided transfer not occurred."). We also note that Wells Fargo claimed at oral argument that it remains an unsecured creditor of the estate and that it will be entitled to more than 90% of any funds distributed by the trustee. Thus, Wells Fargo admits that it will now receive back the portion of its unsecured claim that it is entitled to receive under the Bankruptcy Code.

## III. CONCLUSION

The bankruptcy court did not err in avoiding the transfer of the mortgage to Wells Fargo as a preference under 11 U.S.C. § 547(b) and in awarding judgment to the trustee in the amount of $190,808.71 under 11 U.S.C. § 550(a).  Accordingly, we affirm.

_____