# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3924

_____

Willie Johnson,                          *
                                         *
            Appellant,                   *
                                         *    Appeal from the United States
      v.                                 *    District Court for the
                                         *    District of Nebraska.
Ready Mixed Concrete Co., a              *
Nebraska Corporation and division        *
of Lyman-Richey Corporation, a           *
Delaware Corporation,                    *
                                         *
            Appellee.                    *

_____

Submitted: June 24, 2005
Filed:  September 26, 2005

_____

Before ARNOLD, McMILLIAN, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Willie Johnson appeals from the district court's[1] grant of summary judgment in favor of Ready Mixed Concrete ("Ready Mixed") in his suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17.  We affirm.

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

I.

Johnson, an African-American, was employed as a truck driver by Ready Mixed from 1994 until 2002. He drove a cement mixing truck for the company and was based out of its plant in Omaha, Nebraska. On June 13, 2002, Ready Mixed fired Johnson, citing dishonesty as the reason for his termination.

Johnson's alleged dishonesty occurred in connection with an incident in which his truck was damaged by acid while he was washing it. All truck drivers at Ready Mixed were required periodically to clean their trucks. The drivers cleaned their truck cabs using soap and water, but cleaned the drums of the trucks with a solution of diluted acid. The parties do not dispute that on Friday, June 7, Johnson was told to clean his truck before leaving for the day, and that he reported acid damage to his truck on the following Wednesday, June 12. They dispute, however, when and how the acid damage occurred.

Johnson asserts that the acid damage occurred on Friday, June 7. According to his deposition testimony, Johnson washed his truck out quickly that day after being asked to do so, because he "was excited to get off early to enjoy the weekend." (J.A. at 94). Johnson pulled up next to the water hose and filled his bucket up with water and soap. Leaving his broom in the bucket, he went to use the restroom, came back, and started washing. Johnson began by washing one passenger door and the hood. While walking back to the water hose to rinse off the door and hood, he noticed that his truck "was changing colors." He knew from the discoloration that "it must have been acid in that bucket." Johnson testified later that he thought the acid had been added to his bucket either by a fellow employee seeking to conserve acid or as a result of "sabotage." (J.A. at 88, 108)

Johnson's supervisors testified that they did not believe that the acid damage occurred to his truck on Friday, June 7, but rather that it must have occurred on

Tuesday, June 11, the day before Johnson reported the damage. They also testified that they did not believe Johnson's assertion that the acid was added to his bucket by a fellow employee. When Johnson brought the damage to the attention of John Stueve, the plant superintendent, on June 12, Stueve examined the truck and then contacted William Herschlag, who was the acting general superintendent of Ready Mixed's concrete plants. Either Stueve or Herschlag asked Johnson to fill out a company damage report, known as a "Form 5." On the Form 5, Johnson drew a scene of the "accident" and reported that the acid damage had occurred on June 7. He recounted the incident as described above and concluded that "I bel[ie]ve someone had to pour a[ci]d in my Bucket when I went to Restroom. Sab[o]tage." (J.A. at 209).

After receiving Johnson's report, Stueve and Herschlag investigated the acid incident. Stueve was skeptical that the damage had occurred on June 7, maintaining that he "[a]bsolutely" would have noticed any acid damage to Johnson's truck occurring prior to June 11. He testified in his deposition that he "would have observed" Johnson's truck "numerous times" between June 7 and June 12, either from his office or while performing duties near where it was parked. Stueve and Herschlag reviewed Johnson's time record from Friday, June 7, which indicated that Johnson had clocked out twenty minutes after being told to wash his truck. According to Stueve, he did not believe that Johnson could have washed his truck, gone to the restroom, and, as required by company procedure, refueled his truck in twenty minutes. Herschlag testified that he did not think Johnson had sufficient time to "clean the truck, as he had stated." (J.A. at 515).

Stueve, moreover, did not believe Johnson's suggestion that another employee put acid in Johnson's bucket, reasoning that he did not "have employees at [the plant] that would purposely do that." (J.A. at 422). Herschlag likewise testified that he and Stueve "did not believe" that Johnson had been sabotaged, (J.A. at 522), and that

Johnson's accusation that "somebody else pour[ed] acid into his bucket," in his view, was "false." (J.A. at 541).

Stueve also testified that three employees approached him on June 12 with information about the acid damage. These employees each wrote out statements saying that they saw Johnson washing his truck on June 11. One of them testified expressly that Johnson "put[] acid into a five gallon bucket," and "proceeded to clean his truck with the acid."

On June 13, in response to Stueve's skepticism of Johnson's claim that the acid damage had occurred on June 7, Johnson submitted another statement explaining his actions on June 11. He claimed that the acid he had been seen with was "to help clean the hopper and drum," and that on June 11, he "washed only the D[ru]m & hopper."

Still disbelieving Johnson's account, Stueve faxed the Form 5, along with the three employee statements and a statement of his own, to Kevin Schmidt, Executive Vice President and Chief Operating Officer of Ready Mixed. Schmidt then approved Johnson's dismissal "due to dishonesty and falsification of company documents." (J.A. at 553). Herschlag informed Johnson of his termination on June 13, 2002. Schmidt asserts that he spoke to Johnson shortly after he was fired, and that Johnson claimed that two fellow truck drivers could support his version of events. The two truck drivers gave statements saying that they had not seen Johnson washing out his truck on June 7. One of them stated that he had seen Johnson washing his truck's hopper with acid on June 11, and the other stated that he had been away from work on June 11. On June 19, Schmidt told Johnson that neither driver corroborated his story, and Johnson identified three other employees as potential witnesses. Statements were obtained from all of these employees, none of whom reported seeing Johnson washing his truck on June 7.

Johnson sought unemployment benefits, but Ready Mixed denied his petition. Johnson filed a charge of discrimination with the Nebraska Equal Opportunity Commission ("NEOC"), which ultimately notified him of his right to sue under Title VII. Johnson then filed suit on October 10, 2003, alleging that the termination of his employment violated the statute's prohibition on race discrimination.

The district court granted Ready Mixed's motion for summary judgment, reasoning that although Johnson had stated a prima facie case of discrimination, he had not demonstrated a genuine dispute for trial over whether Ready Mixed's proffered reason for dismissing him – his dishonesty regarding the acid damage to his truck – was merely pretext for race discrimination. The district court also refused to draw a negative inference from Ready Mixed's failure to produce photographs of the damage to Johnson's truck.

## II.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We review a district court's grant of summary judgment *de novo*, drawing all reasonable inferences, without resort to speculation, in favor of the non-moving party. *See Hitt v. Harsco Corp.*, 356 F.3d 920, 923-24 (8th Cir. 2004).

Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer to "discharge any individual . . . because of such individual's race, color, religion, or national origin." 42 U.S.C. § 2000e-2(a). The parties agree that the burden-shifting framework promulgated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), should be applied to determine whether Ready Mixed was entitled to summary judgment. Under the *McDonnell Douglas* framework, a plaintiff must establish a prima facie case by showing that he (1) is a member of a protected class, (2) was qualified for his position, and (3) suffered an adverse

employment action under circumstances permitting an inference that the action was the result of unlawful discrimination. *See Habib v. Nationsbank*, 279 F.3d 563, 566 (8th Cir. 2001). The burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for firing the plaintiff. *Id.* If the employer can satisfy this burden, the plaintiff must show that the employer's reason is a pretext for intentional discrimination. *Id.* Because the record was fully developed in connection with the motion for summary judgment, we need not analyze each step of the burden-shifting framework on appeal, but instead may turn directly to whether there is a genuine issue for trial on the question of race discrimination *vel non*. *See United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983); *George v. Leavitt*, 407 F.3d 405, 411-12 (D.C. Cir. 2005).

Johnson's principal argument is that two white truck drivers, Kenneth Schroeder and Carl Spencer, were involved in conduct similar to his alleged misconduct, but were not fired. Schroeder and Spencer both had acid-damaged trucks but did not voluntarily report the damage. Johnson asserts that the two drivers "concealed" the damage from the company. He argues that the conduct of Schroeder and Spencer was thus dishonest, just as his conduct was believed to be dishonest, and that the differential treatment by Ready Mixed supports an inference that Johnson was discharged because of his race. We disagree that Schroeder and Spencer were similarly situated to Johnson in all relevant respects, as required to demonstrate race discrimination based on disparate treatment of fellow employees. *E.g.*, *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972-73 (8th Cir. 1994). We thus conclude that an inference of race discrimination is not supported.

The evidence does not bear out Johnson's suggestion that Ready Mixed must have viewed the conduct of Schroeder and Spencer as "dishonest," but treated them differently than Johnson. Johnson identifies no evidence that Ready Mixed believed that Schroeder or Spencer violated any duty to the company requiring disclosure of acid damage, or that management considered their conduct to be dishonest.

Schroeder and Spencer both testified the acid damage to their trucks was observed by supervisors, thus suggesting that it could not have been intentionally "concealed" as Johnson asserts. Spencer testified specifically that he was *not* told that he should have reported the damage, (J.A. at 664), and Schroeder was not even asked in his deposition about a reporting requirement. Neither supervisor, Stueve or Herschlag, testified that Schroeder or Spencer violated any policy relating to reporting of damage. And most importantly, there is no showing that Schroeder or Spencer misrepresented any facts to Ready Mixed or falsified reporting documents, as the company believed that Johnson had done. Violations of different company policies do not necessarily support an inference that employees are similarly situated, particularly where one violation is considered more serious than the other. *See Tolen v. Ashcroft*, 377 F.3d 879, 882-83 (8th Cir. 2004); *Malone v. Eaton Corp.*, 187 F.3d 960, 962 (8th Cir. 1999); *Lowe v. J.B. Hunt Transport, Inc.*, 963 F.2d 173, 175 (8th Cir. 1992). In short, the record does not support an inference that these two drivers were similarly situated to Johnson in all relevant respects, but treated differently.

Johnson next contends that contrary to Ready Mixed's conclusion, the time card information from June 7 shows that Johnson had sufficient time to wash his truck on that date, and that the company's conclusion that Johnson lied about the date of the damage is therefore flawed. One difficulty with this argument is that Johnson must show not only that the employer may have been incorrect in its conclusion about the events of June 7, but that the employer did not really *believe* that Johnson was dishonest. *Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1045 (8th Cir. 2000). If the employer was motivated by a good faith belief that Johnson was dishonest, then it was not motivated by his race, even if the conclusion about timing was erroneous. Absent other evidence to show that the employer was actually motivated by race, moreover, proof that it reached an unfounded conclusion about Johnson's dishonesty is insufficient to prove the claim.

Johnson also asserts that the district court erred by refusing to draw a negative inference from Ready Mixed's failure to produce pictures of the damage to his truck. He argues that the pictures would have shown that the acid damage to his truck was similar to the damage to the trucks of Schroeder and Spencer, who were not fired. We review for abuse of discretion the district court's decision whether to draw an adverse inference based on destruction of evidence. *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 745 (8th Cir. 2003). An adverse inference is appropriate only when, among other things, the party seeking the inference can show that once-extant records were destroyed "to suppress the truth," and that the records would have favored its case. *Groves v. Cost Planning & Mgmt. Int'l, Inc.*, 372 F.3d 1008, 1010 (8th Cir. 2004); *see also Koons v. Aventis Pharms., Inc.*, 367 F.3d 768, 780 (8th Cir. 2004).

Although there is some evidence in the record suggesting that pictures should have been taken of Johnson's truck, and that Ready Mixed typically took pictures of truck damage, Johnson has not shown that any pictures actually were taken of his truck. None of the witnesses who were deposed recalls seeing any such pictures, or seeing them taken. More importantly, even if the pictures did exist, Johnson has proffered no evidence that they were intentionally destroyed to suppress the truth or that they would have helped his case. The relative severity of the damage to the three trucks is not relevant to Johnson's claim. The stated basis for termination was Johnson's perceived dishonesty, not the severity of damage to his truck. Even if the acid damage to Johnson's truck was as severe or less severe than the damage to the trucks of Schroeder and Spencer, therefore, it would not demonstrate that Schroeder and Spencer were similarly situated in a relevant respect. The district court did not abuse its discretion in determining that an adverse inference from the absence of pictures was unwarranted.

In one of our most oft-quoted passages, we said in 1994 that "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business

decisions." *Harvey v. Anheuser Busch, Inc.*, 38 F.3d 968, 973 (8th Cir. 1994) (internal quotations omitted). One reason we emphasize this point is that a number of plaintiffs present a sympathetic situation in which the employer's judgment in imposing discipline may appear poor or erroneous to outsiders. It is tempting to think that the role of the federal courts is to offer a remedy in that sort of case. Whether we might believe that Ready Mixed was unduly harsh in its treatment of Mr. Johnson, however, is not a matter to be considered in deciding this appeal. Our authority is to determine only whether there is a genuine issue for trial on the question whether Ready Mixed discharged Johnson *because of his race*. For the reasons set forth above, we agree with the district court that the record developed by Johnson is not sufficient to support a finding of intentional race discrimination, and that summary judgment was appropriate.

For the foregoing reasons, the judgment of the district court is affirmed. Ready Mixed's motion to supplement the record on appeal is denied as moot.

_____