# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3453

_____

William M. McGinnis,                  *
                                      *
          Appellant,                  *
                                      *  Appeal from the United States
     v.                               *  District Court for the
                                      *  District of Nebraska.
Union Pacific Railroad,               *
                                      *
          Appellee.                   *

_____

Submitted: March 15, 2007
Filed: August 3, 2007

_____

Before RILEY, BOWMAN, and ARNOLD, Circuit Judges.

_____

RILEY, Circuit Judge.

After being terminated from his employment with Union Pacific Railroad (Union Pacific), William M. McGinnis (McGinnis) filed a lawsuit against Union Pacific claiming sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and age discrimination under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 to 634. Union Pacific filed a motion for summary judgment, and the district court granted the motion. McGinnis appeals the district court's ruling. We affirm.

## I.   BACKGROUND

McGinnis worked for Southern Pacific Railroad (Southern Pacific) from 1974 until 1996, when Southern Pacific merged with Union Pacific.  After the merger, McGinnis continued to work for Union Pacific as a train dispatcher until he was terminated in December 2002.

While working for Union Pacific, McGinnis worked at the Harriman Dispatch Center in Omaha, Nebraska, under the supervision of the Corridor Managers. Managers of Train Dispatchers also worked at the Harriman Dispatch Center providing lateral operations support to train dispatchers, but the Managers of Train Dispatchers could not hire, fire, or discipline train dispatchers.  Dennis Faircloth (Faircloth) was the Senior Manager of Train Dispatchers when McGinnis was terminated.  Joseph Fortner (Fortner), the General Director of Operations Support, made the final decisions to hire, fire, or discipline train dispatchers like McGinnis. Fortner, however, would seek and rely upon Faircloth's input regarding disciplinary decisions concerning train dispatchers.

Train dispatchers are governed by train dispatcher rules.  Rule 1.3.1 of these rules requires dispatchers to "ask their supervisor for an explanation of any rule, regulation, or instruction they are unsure of."

Between 1998 and 2002, McGinnis received the following six citations for violating train dispatcher rules:

(1)    In July 1998, for violating a rule providing that once a train dispatcher has given a signal to a train and aligned the train down the main railroad track, a train dispatcher may not change that signal.

(2)    In August 1998, for failing to correct a train engineer's mistake of repeating the incorrect train engine number.

(3)     In June 1999, for violating a rule requiring dispatchers to issue track bulletins regarding the limits on the speed at which a train should travel on particular tracks–McGinnis issued a bulletin authorizing a train to exceed the speed limit.

(4)     In April 2000, for violating a rule requiring dispatchers to communicate a speed restriction accurately to an Amtrak train.

(5)     In December 2000, for violating a rule prohibiting a freight train from passing between an Amtrak train and the passenger platform while passengers are disembarking from the Amtrak train.

(6)     In November 2002, for violating a rule requiring dispatchers to inform a train that a switch was lined against it.

McGinnis's last citation revealed McGinnis admittedly did not fully understand a part of the train dispatcher system (DigiCom).  Thus, Fortner required McGinnis to enroll in a one-month apprentice training course.  At the end of training, McGinnis took a written and proficiency examination.  McGinnis passed the written examination, but McGinnis failed the proficiency examination and did not score high enough to qualify to retake the examination.

In December 2002, citing "poor performance ratings, rules violations, and [the] failure to qualify on the proficiency test," Union Pacific terminated McGinnis, who at the time was 49 years old.  Union Pacific replaced McGinnis with a 53-year-old male.  Claiming sex and age discrimination,[1] McGinnis filed a lawsuit against Union

---

[1]McGinnis also asserted claims of sex and age discrimination under Nebraska law.  We analyze these state law claims within the same framework as those brought under federal law.  See Riesen v. Irwin Indus. Tool Co., 717 N.W.2d 907, 913-14 (Neb. 2006) (noting Nebraska employment discrimination laws mirror federal

Pacific. This appeal followed the district court's summary judgment in Union Pacific's favor.

## II. DISCUSSION

We review de novo a district court's decision to grant summary judgment. See Bowen v. Mo. Dep't of Soc. Servs., 311 F.3d 878, 880 (8th Cir. 2002). Summary judgment is proper when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Reasonover v. St. Louis County, Mo., 447 F.3d 569, 578 (8th Cir. 2006). We may affirm summary judgment for any reason supported by the record, "even if it differs from the rationale of the district court." Reasonover, 447 F.3d at 578-79.

In sex and age discrimination cases, a plaintiff may survive a defendant's motion for summary judgment in one of two ways. The plaintiff may present "direct evidence of discrimination, that is, evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." Russell v. City of Kan. City, Mo., 414 F.3d 863, 866 (8th Cir. 2005) (internal quotation marks omitted). Alternatively, if the plaintiff lacks direct evidence of discrimination, the plaintiff may survive the defendant's motion for summary judgment by creating an inference of unlawful discrimination under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Russell, 414 F.3d at 866-67. Under this framework, the plaintiff

---

legislation, thus, Nebraska looks to federal law in analyzing these claims); Helvering v. Union Pac. R. R. Co., 703 N.W.2d 134, 146-47 (Neb. Ct. App. 2005) (same). In addition, McGinnis asserted a claim for religious discrimination under Title VII, and a claim for a violation of the New York Dock conditions, pursuant to 49 U.S.C. § 11705, but McGinnis does not appeal the district court's grant of summary judgment on these two claims.

bears the burden of establishing a prima facie case of discrimination. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). The Supreme Court explained the plaintiff's burden "is not onerous." Id. at 253. The establishment of a prima facie case creates a presumption of unlawful discrimination, which in turn requires a defendant to come forward with evidence of a legitimate, nondiscriminatory reason for the defendant's actions. Id. If the defendant articulates such a reason, the burden returns to the plaintiff to show the defendant's proffered reason is pretextual. Id.

## A.    Sex Discrimination

McGinnis's sex discrimination claim is based on his contention that sexual favoritism was widespread within Union Pacific. In arguing this point, McGinnis generally claims Union Pacific provided young women with better job opportunities and treated young women more favorably than men. McGinnis specifically alleges Faircloth had a sexual affair with Lori Buseman (Buseman), another Union Pacific employee, and took adverse action against McGinnis in an attempt to give McGinnis's job to Buseman. McGinnis also states schedulers gave heavier workloads to less attractive females. McGinnis asserts Faircloth protected attractive female dispatchers who violated rules and gave them preference for daytime shifts. McGinnis contends these allegations constitute direct evidence of sexual favoritism.

However, McGinnis's allegations, even if true, do not indicate direct evidence of widespread sexual favoritism. McGinnis's concrete allegations are only directed at Faircloth and his alleged affair with Buseman. "[W]here an employee engages in consensual sexual conduct with a supervisor and an employment decision is based on this conduct, Title VII is not implicated because any benefits of the relationship are due to the sexual conduct, rather than the gender, of the employee." Tenge v. Phillips Modern Ag Co., 446 F.3d 903, 909 (8th Cir. 2006). Furthermore, Faircloth was neither McGinnis's supervisor nor the decisionmaker who fired McGinnis. Fortner was the decisionmaker who terminated McGinnis, and no allegations of sex

discrimination or sexual favoritism were made against Fortner. A single allegation against Faircloth cannot constitute widespread sexual favoritism.

The Equal Employment Opportunity Commission (EEOC) also reached the same conclusion. In a policy guidance issued in 1990, the EEOC stated widespread sexual favoritism occurs when "a message is implicitly conveyed that the managers view women as 'sexual playthings,' thereby creating an atmosphere that is demeaning to women." EEOC Policy Statement No. N-915-048 § C. Here, nothing in McGinnis's charges establishes that Union Pacific managers viewed women as "sexual playthings." McGinnis lacks any direct evidence of sex discrimination.

McGinnis also is unable to establish a claim of sex discrimination under the McDonnell Douglas framework. Under this framework, McGinnis initially must establish a prima facie case, which consists of showing he (1) is within the protected class, (2) was qualified to perform his job, (3) suffered an adverse employment action, and (4) has facts that give rise to an inference of sex discrimination. Holland v. Sam's Club, 487 F.3d 641, 644 (8th Cir. 2007).[2]

_____

[2]The district court misapplied the second element of the prima facie case for McGinnis's sex and age discrimination claims. The district court stated, "the evidence shows [McGinnis] received a number of rule violations which would cause him to not be qualified for his job." Under the qualification prong, a "plaintiff must show only that he possesses the basic skills necessary for performance of the job," not that he was doing it satisfactorily. Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2d Cir. 2001) (alteration omitted). The district court incorrectly applied a higher standard than required to establish a prima facie case. Arnold v. Nursing & Rehabilitation Ctr. at Good Shepherd, LLC, 471 F.3d 843, 846 (8th Cir. 2006) (citing Slattery, 248 F.3d at 91). "[W]here discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw." Slattery, 248 F.3d at 92. McGinnis was employed for twenty-eight years before his discharge and did not receive any citations for violating work rules in his first twenty-three years of employment. McGinnis clearly met the minimal qualification standard.

To establish the first prong of his prima facie case, McGinnis must show Union Pacific is the unusual employer who discriminates against the majority because McGinnis is a man. See Duffy v. Wolle, 123 F.3d 1026, 1036 (8th Cir. 1997). This is difficult to establish because, at the time McGinnis was terminated, Union Pacific had approximately 401 train dispatchers working at the Harriman Dispatch Center, and approximately 329 of the 401 train dispatchers, or 82%, were men. However, even assuming McGinnis establishes this and all the other prongs of his prima facie case, McGinnis's sex discrimination claim nevertheless must fail because Union Pacific has offered legitimate, nondiscriminatory reasons for McGinnis's termination: his six rules violations and his failure to pass the proficiency examination of the apprentice training course. McGinnis has not offered any evidence to support a claim Union Pacific's reasons were pretextual. In fact, on each occasion he was cited for violating work rules, McGinnis did not challenge the citations. Thus, McGinnis's sex discrimination claim under the McDonnell Douglas framework must also fail.

## B. Age Discrimination

Because McGinnis does not purport to have direct evidence to establish age discrimination, he must rely on the McDonnell Douglas framework. McGinnis must establish a prima facie case by showing he (1) belonged to the protected class, i.e.,

---

With respect to the fourth prong, the district court erred when it required McGinnis to show he was replaced by someone from the opposite sex to establish a prima facie case. Although proof McGinnis was replaced by a female would have bolstered his case, "[n]o such per se requirement has traditionally been imposed in cases brought under Title VII." Williams v. Ford Motor Co., 14 F.3d 1305, 1308 (8th Cir. 1994). "Rather, Title VII has been interpreted to require only that, in addition to the first three elements of the McDonnell Douglas test, a plaintiff show that his or her discharge occurred under circumstances which create an inference of unlawful discrimination." Id. "In the context of a sex discrimination claim brought under Title VII, . . . it is entirely plausible that a woman discharged and replaced by another woman will be able to establish that she was the object of impermissible discrimination based on gender." Id. The sex of the replacement employee "pertains to the weight of the evidence as opposed to its legal sufficiency." Id.

was at least 40 years old; (2) was qualified to perform his job;[3] (3) was terminated; and (4) was replaced by another person "sufficiently younger to permit the inference of age discrimination."[4]  Hammer v. Ashcroft, 383 F.3d 722, 726 (8th Cir. 2004) (citations omitted).

Although McGinnis is over forty years old, was qualified for the job (he worked for Southern Pacific/Union Pacific for approximately twenty-eight years), and was terminated, McGinnis has not provided any evidence he was replaced by another person "sufficiently younger to permit the inference of age discrimination."  Id.  At the time of his termination, McGinnis was forty-nine years old and his replacement was a fifty-three-year-old male.  See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996) (noting "the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination").  But, even if we

---

[3]Here again the district court incorrectly applied the prima facie case standard by requiring a heightened standard for McGinnis to establish he was qualified for the position.  The district court stated, "the court has already determined that the numerous safety violations are sufficient to show that [McGinnis] did not meet the qualifications for his job."  As previously indicated, McGinnis was employed for twenty-eight years before his discharge and did not receive any citations for violating work rules in his first twenty-three years of employment.  As to the qualification prong, the district court's approach, in a sense, required McGinnis to disprove the reasons given for his discharge rather than requiring him to establish a prima facie case–short-circuiting the analysis under the McDonnell Douglas framework.  Slattery, 248 F.3d at 92 ("The qualification prong must not . . . be interpreted in such a way as to shift onto the plaintiff an obligation to anticipate and disprove, in his prima facie case, the employer's proffer of a legitimate, non-discriminatory basis for its decision.").

[4]The district court also erred by stating McGinnis needed proof "age was the factor in the defendant's decision to terminate him."  This increased proof is needed only in reduction in force cases when a company lays off protected individuals while retaining younger employees in similar positions.  See Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 776 (8th Cir. 1995).

concluded McGinnis established a prima facie case of age discrimination, McGinnis's age discrimination claim fails, because McGinnis has not offered any evidence indicating the reasons Union Pacific proffered for terminating him were pretextual.

As a last attempt to survive Union Pacific's motion for summary judgment, McGinnis now disputes the validity of his citations for violating dispatcher's rules. However, as previously mentioned, McGinnis never challenged the citations when he received them. McGinnis also claims other employees who violated rules were not fired and that he was "set up to fail" the apprentice training course. McGinnis does not cite to any specific examples of employees, similarly situated in all relevant respects, who received more favorable treatment. See Cronquist v. City of Minneapolis, 237 F.3d 920, 928 (8th Cir. 2001) ("The test for whether employees are similarly situated to warrant a comparison to the plaintiff is rigorous." (internal quotation marks omitted)). Furthermore, McGinnis was not the only person who failed the training course examination. Other individuals, including men and women younger than McGinnis, failed the examination. McGinnis's belated challenges to the validity of his work citations and to the apprentice course proficiency examination are meritless.

## III.   CONCLUSION

Based on the foregoing, we affirm the district court's grant of summary judgment in favor of Union Pacific.

_____