# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3201

_____

Norma Dixon,                                    *
                                                *
              Appellant,                        *
                                                *   Appeal from the United States
        v.                                      *   District Court for the Eastern
                                                *   District of Arkansas.
Pulaski County Special School District,         *
                                                *
              Appellee.                         *

_____

Submitted: April 16, 2009
Filed: August 27, 2009

_____

Before WOLLMAN, MELLOY, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

Norma Dixon—an African-American woman who has worked for the Pulaski County Special School District (the "School District") since 2001—applied for a "Buyer" position with the School District in 2006. She was not given an interview for the position, and she sued for racial discrimination under 42 U.S.C. §§ 1981, 1983, 2000(e) and Arkansas Code section 16-123-101. The district court[1] granted summary judgment for the School District, finding that although Dixon had established a prima

_____

[1] The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

facie case, she was unable to show that the School District's proffered non-discriminatory reason was pretext for discrimination. Dixon appeals. We affirm.

I.

Dixon joined the School District in 2001 as a "Purchasing Clerk." William Rains, the "Director of Purchasing," sought to have the Purchasing Clerk position upgraded to a "Purchasing Specialist" position, which, unlike the Purchasing Clerk position, would progress into the higher-level Buyer position. The School District denied his request. After one year, Dixon obtained a higher-paying bookkeeping position in the School District's food-services department. A few months later, she returned to the purchasing department with a promotion to "Secretary to the Director of Purchasing."

In late 2006, William Rains retired, and Sinclair Winburn was promoted from Buyer to Director of Purchasing. The School District's human resources department posted a job announcement for Winburn's now-open Buyer position. The minimum qualifications for the position were, inter alia, a college degree and "[f]ive years experience in public purchasing." The School District's policy required that a bi-racial, three-person interview committee screen the applications and that all applicants meeting the minimum qualifications be given an interview. Winburn stated that he was unaware of the college-degree requirement and that he had considered Rebecca Rains,[2] the woman the School District ultimately hired, to be the sole qualified applicant. Nevertheless, Winburn, in his new position, scheduled interviews with all six applicants, including Dixon and Rebecca Rains. The Superintendent, however, pulled the announcement because none of the six applicants met the minimum

---

[2] Rebecca Rains is also the wife of the retired Director of Purchasing, William Rains. She had applied for the Director position when William Rains retired, but the School District selected Winburn over her.

requirements (i.e., possessed a college degree), and Winburn accordingly cancelled the interviews.

Winburn then submitted a "corrected" job announcement, which was posted after review by his superiors. The title of the position was changed from "Buyer" to "Buyer/Fixed Asset Administrator," and the requisite experience and the position's responsibilities were also amended to include references to fixed assets. The revised job posting did not include a college-degree requirement. According to Winburn, the change in the job description was meant to update the description to reflect the actual responsibilities of the Buyer position: the "Fixed Asset Specialist" position had been frozen several years before for budgetary reasons, and the person in the Buyer position had taken over the fixed-asset responsibilities. Dixon claims that the "new" position was "phoney" and that Winburn tailored the qualifications specifically to render Dixon unqualified. She also argues that the amendments to the job description resulted in an entirely new support-staff position, which required the Board of Education Policies's approval and that, in failing to obtain the approval, the Superintendent violated School District policy. In support of her argument that the Buyer/Fixed Asset Administrator position was fictitious, Dixon points to school-board minutes that refer to Rebecca Rains's position only as "Buyer" and to Rebecca Rains's employment contract, which states the position's primary responsibility as "Buyer." Dixon does not contest, however, that there had been, and still is, a separate Fixed Assets Specialist position that was frozen; rather, she asserts that adding the fixed-asset responsibilities to the Buyer position contravened "[the school board's] will and procedures since the 'Fixed Assets' position had been frozen indefinitely."

Dixon and Rebecca Rains, among others, submitted applications in response to the revised job posting. In violation of School District policy, Winburn alone screened the applicants for the revised posting, though the School District contends that his actions were in line with customary practice. Unlike with the previous posting, Winburn selected only two individuals for interviews, Rebecca Rains and

Kenneth Guillotte, neither of whom are African-American. Winburn stated that he did not select Dixon for an interview because she did not meet the minimum qualifications; specifically, he stated that Dixon did not have the requisite five years' experience as a buyer in public purchasing. School District accountant and interview-committee member Tasha Thompson, however, stated in an affidavit that Winburn had told her that he believed Dixon did have the requisite experience. Thompson also stated that by 2006 Dixon was able to provide information regarding the purchasing department's policies and procedures while William Rains was away.[3]

Although Winburn alone made the decision whether to interview each candidate, he discussed the candidates with the other members of the interview committee, and the other members of the interview committee had reviewed the applications at the time of the first job announcement, including those of Dixon and Rebecca Rains. Moreover, Thompson stated that after reviewing the applications, she felt that Rebecca Rains "had superior qualifications to the other applicants." Rebecca Rains had over twenty years' experience in public purchasing, much of it at senior levels. After the interview committee interviewed the two candidates selected by Winburn, it selected Rebecca Rains.

The district court found, for purposes of establishing a prima facie case, that Dixon had the minimum experience needed. The district court further concluded, however, that the School District put forth a legitimate, non-discriminatory reason for

---

[3] In an affidavit, Thompson also stated that she considered Dixon qualified for the position. In a supplemental affidavit, however, Thompson retracted her statement that she believed Dixon "met the experience qualification," explaining that Dixon's counsel had drafted Thompson's original affidavit and approached her after work hours without School District counsel present. We do not consider Thompson's original statement of her belief as evidence of the School District's view of Dixon's qualifications given the context in which the signed affidavit was obtained and its subsequent partial retraction.

not hiring Dixon and that Dixon was unable to show that the School District's proffered reason was mere pretext for a discriminatory animus.

## II.

We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to Dixon, the non-moving party. Arnold v. Nursing and Rehab. Ctr. at Good Shepherd, LLC, 471 F.3d 843, 845 (8th Cir. 2006). "Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." Id. (quotation omitted).

The parties agree that the McDonnell Douglas burden-shifting analysis applies to Dixon's claims. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973). Under this analysis, a claim proceeds in three stages. First, the plaintiff must establish a prima facie case for discrimination. Id. at 802. Second, the defendant may rebut the prima facie case by articulating a non-discriminatory rationale for its action. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254–55 (1981). Third, the plaintiff must prove that the defendant's proffered rationale was merely pretext for discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

To establish a prima facie case, Dixon must show that (1) she is in a protected class; (2) she was qualified for an open position; (3) she was denied that position; and (4) the School District filled the position with a person not in the same protected class. Arraleh v. County of Ramsey, 461 F.3d 967, 975 (8th Cir. 2006). The School District contends that the fourth element also requires that Dixon show that the School District filled the position with a person similarly qualified to Dixon and that therefore, in light of Rebecca Rains's superior qualifications, Dixon is unable to establish a prima facie case. But the higher standard argued by the School District does not apply in this circuit, for we have squarely rejected the proposition that a plaintiff need prove

her *relative* qualifications to meet her prima facie burden.  See Turner v. Honeywell Fed. Mfg. & Techs., LLC, 336 F.3d 716, 721–22 (8th Cir. 2003).  We do have doubts concerning whether Dixon has created a material question of fact as to whether she met the *minimum* qualifications required for the position so as to satisfy the second element of her prima facie case,[4] but even assuming Dixon has established her prima facie case, her claim ultimately fails for other reasons, as discussed below.

Assuming that Dixon has established a prima facie case, then, it falls to the School District to articulate a legitimate, non-discriminatory reason for not hiring her. Burdine, 450 U.S. at 254–55.  The School District meets this burden by asserting that it did not hire Dixon because she did not possess the minimum qualifications required for the position.  Cf. Qamhiyah v. Iowa State Univ. of Sci. and Tech., 566 F.3d 733, 746 (8th Cir. 2009) (treating lack of qualifications as a legitimate, non-discriminatory reason to deny tenure).  On the particular facts of this case, we note that the second prong of the prima facie test is exceedingly similar to the proffered non-discriminatory reason in this second stage of the burden-shifting analysis, as both concern whether Dixon was minimally qualified for the position.  We are cautious not to conflate the two.  Cf. McGinnis v. Union Pac. R.R., 496 F.3d 868, 875 n.3 (8th Cir. 2007); Slattery v. Swiss Reins. Am. Corp., 248 F.3d 87, 92 (2d Cir. 2001)  ("The qualification prong must not . . . be interpreted in such a way as to shift onto the plaintiff an obligation to anticipate and disprove, in his *prima facie* case, the employer's proffer of a legitimate, non-discriminatory basis for its decision.").  For purposes of her qualifications in her prima facie case, Dixon needed to show that she met the requirements for the position.

_____

[4]Given the two different job postings, the parties dispute what the qualifications for the position are.  At very minimum, though, an applicant must have had at least "five years experience in public purchasing."  In order for Dixon to meet this minimum qualification, her year as a purchasing clerk and her four years as a secretary must be counted in full.  Dixon asserts that she performed many of the duties of a Buyer in her clerical positions, but in order to meet the five-year threshold, both her de facto "Buyer" duties as well as her primary, clerical work must be considered without discount as "experience in public purchasing."

For purposes of the second stage of the burden-shifting analysis, the School District need only articulate, through admissible evidence, that it did not believe Dixon to be qualified. The tension between these two positions underlies our analysis in the next, and final, stage of the burden-shifting analysis.

In the third stage of the <u>McDonnell Douglas</u> analysis, the burden falls on Dixon to show that "the legitimate reasons offered by the [School District] were not its true reasons, but were a pretext for discrimination." <u>Reeves</u>, 530 U.S. at 143 (quotation omitted). At this final stage of the analysis, Dixon's burden "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." <u>Burdine</u>, 450 U.S. at 256. In evaluating the showing of pretext, "evidence used to support the prima facie case is considered along with the other evidence before the court to determine whether there exists a triable fact on the ultimate issue of [discrimination]." <u>Wallace v. DTG Operations, Inc.</u>, 442 F.3d 1112, 1120 (8th Cir. 2006). A plaintiff may make this showing of pretext in more than one way. As we have previously stated:

> There are at least two routes by which a plaintiff may demonstrate a material question of fact at this final stage of the analysis. First, a plaintiff may succeed indirectly by showing that the employer's proffered explanation is unworthy of credence because it has no basis in fact. Second, a plaintiff may succeed directly by persuading the court that a prohibited reason more likely motivated the employer.

<u>Id.</u> (internal quotations, citations, and alterations omitted). Dixon attempts to support her claim under both routes.

A.

Under the first route, Dixon contends both that the School District's proffered explanation was factually incorrect and that it was falsely given. Dixon argues that because she is, in fact, qualified for the position, a negative assessment of her

qualifications is incorrect and evidence of pretext. A misjudgment on the part of the employer as to whether the applicant possesses the required qualifications does not invalidate the resulting proffered reason, see Burdine, 450 U.S. at 259; Dionne v. Shalala, 209 F.3d 705, 709 (8th Cir. 2000) (stating that an employer's view of qualifications was a legitimate, non-discriminatory reason even though employer inadvertently applied an incorrect standard when reaching its conclusion), but "[a]n employer's misjudgment of an employee's qualifications . . . may be probative of whether the reasons articulated for an employment decision were merely pretexts for discrimination." O'Connor v. Peru State Coll., 781 F.2d 632, 637 (8th Cir. 1986) (citing Burdine, 450 U.S. at 259). As mentioned, Dixon's qualifications were questionable. Even assuming that she was factually qualified for the position, any misjudgment on the part of the School District was slight, and as such, provides no evidence of pretext. Such a narrow miscalculation on the part of the School District is insignificant because the essential question is not whether Dixon was actually unqualified for the position; it is whether the School District honestly believed that she was unqualified. See Johnson v. AT&T, 422 F.3d 756, 762–63 (8th Cir. 2005); Hitt v. Harsco Corp., 356 F.3d 920, 924 (8th Cir. 2004). On the present facts, even if a jury were to conclude that the proffered reason was incorrect, such a finding would not support a conclusion that the School District's misjudgment was tainted by discrimination.

Dixon also addresses the School District's "honest belief" directly in that she contends the proffered reason was falsely given; that is, she contends that the School District did believe her to be qualified for the position and that its stated reason for not interviewing her, and thus not hiring her, was false. Falsity of the proffered explanation can serve as evidence of pretext. Reeves, 530 U.S. at 148 ("[I]t is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation."). Dixon's only supporting evidence that Winburn believed her qualifications to be sufficient for the position, however, is hearsay evidence of limited probative value. See Johnson v. Baptist Med. Ctr., 97

F.3d 1070, 1073 (stating that a plaintiff's "'proof' of . . . disparate treatment . . . appear[ed] to consist entirely of hearsay, which cannot defeat a motion for summary judgment").

Moreover, while evidence that Winburn or others may have considered Dixon to be sufficiently qualified would directly contradict the School District's proffered rationale for not interviewing her, in the context of this case, it is still insufficient to create a material question of fact as to pretext. "'[P]retext' . . . often must be read as shorthand for indicating that a defendant's proffered . . . explanation . . . is a pretext for *unlawful discrimination*, not that it is merely false in some way." Strate v. Midwest Bankcentre, Inc., 398 F.3d 1011, 1017 (8th Cir. 2005); see also Hutson v. McDonnel Douglas Corp., 63 F.3d 771, 777 (8th Cir. 1995) ("[P]roof that the defendant's articulated explanation is false or incorrect does not, standing alone, entitle the plaintiff to judgment; instead, the showing must be that the explanation is a pretext *for* discrimination."). A showing that Winburn considered Dixon to be minimally qualified would not demonstrate that the School District's explanation is "unworthy of credence" or without "basis in fact," because it does not diminish the School District's broader explanation founded on Dixon's relative qualifications.

Of course, Dixon's argument that the proffered reason is "unworthy of credence" would carry more weight were there any evidence that the School District's broader explanation founded on her relative qualifications was false. The route of discriminatory inference based on falsity of the proffered reason "typically involves a broader rebuttal of the employer's factual claims." Wallace, 442 F.3d at 1120. To this end, Dixon attempts to frame the issue such that we consider only whether she met the minimum requirements for the position, ignoring that the School District selected a more qualified candidate. Relative qualifications may not be relevant for the prima facie stage, but they are for the pretext stage. Dixon has no evidence rebutting the School District's broader claims that it simply hired someone far more qualified, and Dixon has presented no evidence indicating that her qualifications are

comparable to those of the successful applicant. Dixon attempts to argue that a meaningful comparison of qualifications is impossible because she was not granted an interview, but at least one of the two other members of the interview committee, Thompson, did review Dixon's application for the original posting and believed Rebecca Rains to have superior qualifications. We see no reason that Thompson's evaluation would not apply at least as much to the revised posting. Especially given the disparity of qualifications between Dixon and Rebecca Rains, the failure to grant Dixon an interview did not remove Dixon from meaningful consideration such that we are in a position to second-guess the School District's employment decision. See e.g., Arraleh, 461 F.3d at 976 (stating that federal courts do not "sit as super-personnel departments" to review employers' business decisions (quotation omitted)).

B.

Dixon also attempts to show pretext under "[t]he second route, [which,] in contrast, does not necessarily involve disproving the underlying factual claims of the employer." Wallace, 442 F.3d at 1121. To succeed under this route, Dixon "must adduce enough admissible evidence to raise genuine doubt as to the legitimacy of [the School District's] motive, even if that evidence does not directly contradict or disprove [the School District's] articulated reasons for its actions." Buettner v. Arch Coal Sales Co., 216 F.3d 707, 717 (8th Cir. 2000). Dixon contends that pretext is evidenced by (1) the revision of the job description and (2) Winburn's "unilateral" review of the applications.

Regarding the job description, Dixon does not directly contest the School District's assertion that the revised job description and the attendant job requirements accurately reflect the current responsibilities of the position. Rather, she argues that failure to have the revision properly approved, and the employment-contract and board-minutes references to the position by its original title of "Buyer," is evidence that Winburn tailored the job description to exclude Dixon in favor of Rebecca Rains.

-10-

Tailoring job qualifications to exclude a candidate in favor of a preselected candidate can be evidence of pretext. See Coble v. Hot Springs Sch. Dist. No. 6, 682 F.2d 721, 728–29 (8th Cir. 1982) (finding an unexplained French certification requirement for a school counselor position invalid and evidence of preselection, "effectively discredit[ing] the school district's proffered [relevant-experience] explanation"). But that is not always so. Brandt v. Shop 'n Save Warehouse Foods, Inc., 108 F.3d 935, 938 (8th Cir. 1997) (holding evidence was insufficient to support a jury's finding of discrimination where an employer tailored job requirements to hire a male friend rather than a female applicant). Here, the uncontested evidence shows that the revised job qualifications accurately represented the responsibilities of the position, and updating a job description to reflect the current responsibilities of the position is not itself evidence of pretext. The reference to "Buyer" as the position's "primary responsibility" in the employment contract is not inconsistent with the job posting, and the use of the original title in board minutes is too little evidence to sustain Dixon's argument. Moreover, to the extent Dixon argues that assigning fixed-asset responsibilities to the Buyer position is against the school board's intent of freezing the fixed-asset position, we find the argument completely unsupported.

We recognize, however, that in some circumstances, an employer's violation of its own policies may be indicative of pretext. See Young v. Warner-Jenkinson Co., 152 F.3d 1018, 1024 (8th Cir. 1998) ("[T]he fact that [an employer] may have deviated from its [employee absenteeism] policies, when coupled with the fact that the company mischaracterized [the plaintiff-employee's attendance record] in a manner giving rise to negative connotations, lends support to an inference of improper motive."). Here, the School District's policy required the Board of Education Policies to approve "any new position," and whether an amended position constituted a "new" position for purposes of the policy is a question of fact. There is an outstanding question as to whether the School District followed its procedures when Winburn and his supervisor changed the job description without full approval. But these questions are immaterial. Even assuming that School District policy required board approval

-11-

for this particular position and that the Superintendent did not seek such approval, on the facts before us, this policy violation would not be evidence of pretext. <u>See</u> <u>Floyd v. Mo. Dep't of Soc. Servs.</u>, 188 F.3d 932, 937 (8th Cir. 1999) (stating that "[a]n employer's failure to follow its own policies may support an inference of pretext" but finding no pretext where departures from policy affected all candidates, not only the plaintiff). Contrary to Dixon's assertion that the approval policy provided an "important check," there is no indication that this policy was in any way related to preventing discrimination in hiring. Further, the violation affected all candidates and was not a violation specific to Dixon. <u>See</u> <u>id.</u>[5] Given the facts before us, the alleged policy violation in the posting's revision adds little to Dixon's pretext argument.

Dixon also contends that Winburn failed to follow procedures when he screened the applicants himself rather than allowing the entire interview committee to screen the applicants. Again, failure to follow established procedures may be evidence of pretext for discrimination, but it is not always enough to create a triable question of fact on the issue. <u>See</u> <u>Chock v. Nw. Airlines, Inc.</u>, 113 F.3d 861, 864–65 (8th Cir. 1997) (finding no pretext when departures from policy were not along racial lines and plaintiff had benefitted from the deviation in the past). This is especially the case where, as here, the procedural violation was in accordance with long-standing practice. The historic practice, the existence of which Dixon does not appear to dispute, provides a potential non-discriminatory explanation for the procedural misstep. Moreover, Winburn's initial deviation from the same policy had allowed Dixon to be scheduled for an interview for the first position. Dixon's argument is

---

[5]While not a factual issue subject to resolution at summary judgment, we also note that if Winburn and the School District's human resources department had intended to exclude Dixon's candidacy for the "corrected" position while keeping their activities secret from the board, they could have done so based on experience factors that in no way implicated the policy. While the availability of a non-violative alternative does not preclude a finding of pretext for discrimination based on a policy violation, it weighs against such a finding.

essentially that Winburn, motivated by discriminatory animus, manipulated the hiring process to prevent the African-American members of the interview committee from considering her application. In light of Dixon's argument, we find it relevant that committee members did review applications and consult with Winburn, even if they were not a part of the ultimate decision. It is also significant, again, in light of Dixon's argument, that at least one of the African-American committee members, Thompson, considered Rebecca Rains to have superior qualifications and that the record lacks any indication that the committee members, having seen both Dixon's and Rebecca Rains's applications, had been interested in interviewing Dixon. Although Winburn's screening of applicants provides Dixon's strongest argument, it is insufficient to support an inference of pretext for discrimination.

Thus, while Dixon has presented some evidence of the type that may be considered evidence of pretext, the very minimal evidence that she has presented, coupled with her weak prima facie case, is not sufficient to support an inference of discriminatory animus. See Arnold, 471 F.3d at 847 ("A plaintiff may make a sufficient showing of pretext by different means, including showing that [the School District] failed to follow its own policies . . . . [But] [r]egardless of the method employed to prove pretext, a plaintiff must demonstrate that a discriminatory animus lies behind the defendants neutral explanations." (internal quotation omitted)).

C.

Dixon argues that a showing of either pretext or discriminatory animus is sufficient for her claim, but in doing so, she overlooks that not any showing of pretext is enough. The pretext must be "pretext *for discrimination*." Reeves, 530 U.S. at 143 (emphasis added) (quotation omitted). "'A reason cannot be proved to be a "pretext *for discrimination*" unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" Floyd, 188 F.3d at 937 (alteration omitted) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)). To be sure,

evidence is not required to "show" a discriminatory animus directly, see Reeves, 530 U.S. at 148, but while in some cases the evidence of pretext—together with the evidence supporting the prima facie case—may be sufficient to infer a discriminatory animus, such a combined showing is not necessarily enough to support that inference in every case. Id. ("This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability."); see Groves v. Cost Planning and Mgmt. Int'l, Inc., 372 F.3d 1008, 1010 (8th Cir. 2004) (per curiam) ("[W]e have confirmed after Reeves that in addition to showing pretext, plaintiffs in reduction of force cases must also show their protected status was a factor in the adverse employment decision."); see also Wallace, 442 F.3d at 1120 n.2 ("[A] *strong* prima facie case coupled with proof of pretext *may* suffice to create a triable question of fact." (emphases added)). No evidence of discriminatory animus is required *if* the other evidence is sufficient to support an inference of discriminatory animus. In light of Dixon's weak prima facie case, the limited probative value of her evidence of falsity, and the disparity in qualifications, her evidence of the School District's procedural irregularities is insufficient to survive summary judgment.

\* \* \*

In conclusion, even assuming Dixon has established a prima facie case, she has not offered sufficient evidence of pretext for a reasonable jury to infer that the School District's proffered rationale was pretext for discrimination. For the foregoing reasons, we affirm the judgment of the district court.

_____