# United States Court of Appeals

### For the Eighth Circuit

_____

No. 15-1472

_____

Jerry Henry

*Plaintiff - Appellant*

v.

Ray Hobbs, Director, Arkansas Department of Corrections

*Defendant*

Danny Burl; Dexter Payne; Jeremy Andrews, Individually, and as Agency Representatives

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Helena

_____

Submitted: January 14, 2016
Filed: May 31, 2016

_____

Before LOKEN, GRUENDER, and KELLY, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Jerry Henry, a former employee of the Arkansas Department of Corrections ("ADC"), brought this action against Warden Danny Burl, Deputy Warden Dexter

Payne, and Major Jeremy Andrews in their individual capacities under 42 U.S.C. § 1983. Henry, an African-American, alleges that his employment was terminated wrongfully on the basis of his race in violation of the Fourteenth Amendment and 42 U.S.C. § 1981. The defendants moved for summary judgment. The district court[1] granted the motion, concluding (1) that Henry failed to raise a disputed issue of material fact to demonstrate that the defendants' legitimate, nondiscriminatory reason for firing Henry was a pretext for discrimination, and (2) that the defendants were entitled to qualified immunity. Henry appeals, and we affirm.

I.

Henry was employed by the ADC as a correctional officer. In March 2011, Major Andrews began an investigation involving the introduction of contraband into the ADC. During this investigation, a confidential informant told Andrews that ADC inmate David Morgan was receiving tobacco from a staff member and selling the tobacco throughout the unit. An ADC search team later found and confiscated tobacco from a different inmate. Andrews interviewed the inmate, who reported that the tobacco belonged to Morgan and that Morgan had approached him about selling tobacco. The inmate also claimed that Morgan was receiving the tobacco from Henry and that he had witnessed Morgan give Henry $500 on one occasion. According to the inmate, Henry passed tobacco to Morgan in the "count room," a computer area in which the prison monitors prisoner movement. Finally, the inmate stated that there was more tobacco hidden elsewhere in the barracks, providing specific locations for ADC staff to search.

Andrews's investigation corroborated these statements. First, ADC staff found contraband in the specific locations the inmate had identified. Second, Andrews

---

[1]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

reviewed camera footage from the count room and confirmed that Henry and Morgan had entered the count room together.

Andrews questioned Henry, who denied bringing any contraband into the prison or receiving money from an inmate. He admitted that he had allowed Morgan into the count room but claimed that he had asked Morgan to help him fill out forms on a computer in the room. The prison previously had directed staff not to have Morgan assist them in the count room, and Henry admitted that he knew that Morgan was not allowed into the room. Andrews also questioned Morgan, whose story was consistent with Henry's.

Andrews submitted a report to Warden Burl, who forwarded the report to ADC Internal Affairs. Internal Affairs interviewed Henry and Morgan and conducted a computerized voice-stress analysis ("CVSA") test on each. Henry and Morgan both denied that Henry had sold tobacco to Morgan. The CVSA test indicated that both had lied.

After the Internal Affairs investigation, Warden Burl terminated Henry's employment. Burl stated in the termination letter that Henry had lied during the CVSA test and had admitted to escorting Morgan to the count room. Burl terminated Henry for committing three offenses prohibited by ADC policy:

> Section 17(a) Failure to perform or carry out work related instructions, when such instructions are reasonable and within the employee's ability to perform and would not pose a safety or welfare hazard to the employee;
>
> 17(b) Deliberate refusal to carry out reasonable work requests and or instructions will be construed as insubordination;
>
> 18(b) Falsification of written/verbal statements/information.

Henry appealed his termination to the State Employee Grievance Appeal Panel. The panel upheld the termination, finding that ADC followed its procedures and that Henry's termination was warranted for making false statements in violation of section 18(b). However, the panel did not find that Henry violated section 17(a) or (b).

Henry sued the defendants for racial discrimination, alleging that Caucasian employees were not disciplined as harshly for violating ADC policy. The only evidence Henry provided for this claim involved a maintenance employee identified as Lt. Tyner. Tyner, a Caucasian, and two other employees, one African-American and one Caucasian, were investigated after ADC staff found several boxes of cigarettes on a bus that was assigned to the three employees. The employees were not terminated. There is no evidence establishing whether any of these employees were required to take a CVSA test. The defendants, in contrast, provided evidence that Burl fired a different Caucasian employee following an unrelated investigation that found that the employee had sold contraband to inmates. The employee was given a CVSA test, which indicated that his answers were deceptive. Burl fired the employee in part for making false statements in violation of ADC policy section 18(b). Henry did not dispute any of these facts. The defendants moved for summary judgment, which the district court granted.

II.

Henry argues that the district court erred by granting summary judgment because Henry demonstrated that the defendants' legitimate, nondiscriminatory reason for terminating his employment was merely a pretext for intentional discrimination on the basis of race. We review the district court's grant of summary judgment *de novo*. *N. Oil & Gas, Inc. v. Moen*, 808 F.3d 373, 376 (8th Cir. 2015). "Summary judgment is appropriate when, viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Wells Fargo Home Mortg.,*

*Inc. v. Lindquist*, 592 F.3d 838, 842 (8th Cir. 2010) (quoting *Henning v. Mainstreet Bank*, 538 F.3d 975, 978 (8th Cir. 2008)).

Henry alleges that the defendants discriminated against him on the basis of his race, in violation of the Equal Protection Clause and 42 U.S.C. § 1981. We consider these claims together, as both are subject to "essentially the same" discrimination analysis as Title VII disparate-treatment claims. *Briggs v. Anderson*, 796 F.2d 1009, 1021 (8th Cir. 1986).

Henry does not identify any direct evidence of discrimination. Absent direct evidence, we apply the *McDonnell Douglas*[2] burden-shifting analysis to claims of employment discrimination under the Equal Protection Clause. *Lockridge v. Bd. of Trs. of Univ. of Ark.*, 315 F.3d 1005, 1010 (8th Cir. 2003) (en banc). Under this framework, the plaintiff bears the burden of establishing a *prima facie* case of discrimination. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011) (en banc). The burden of production then shifts to the defendants to "articulate a legitimate, nondiscriminatory reason" for their actions. *Dixon v. Pulaski Cty. Special Sch. Dist.*, 578 F.3d 862, 868 (8th Cir. 2009). "If the defendant articulates such a reason, the burden returns to the plaintiff to show the defendant's proffered reason is pretextual." *McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 873 (8th Cir. 2007).

We follow our past practice of assuming without deciding that Henry presented a *prima facie* case of discrimination. *See Keefe v. City of Minneapolis*, 785 F.3d 1216, 1225 (8th Cir. 2015). The employer's burden of providing a legitimate, nondiscriminatory reason for an adverse employment action is not onerous. *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 954 (8th Cir. 2012). The defendants' stated reasons for terminating Henry—their determinations that he violated ADC policy by making false statements and improperly allowing an inmate into the count

---

[2]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

room—satisfy this standard. *See Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 811 (8th Cir. 2005) ("If the employer was motivated by a good faith belief that [the employee] was dishonest, then it was not motivated by his race, even if the conclusion about [the employee's conduct] was erroneous."). Accordingly, the burden shifts to Henry to show pretext. *See McGinnis*, 496 F.3d at 873.

Henry claims that he created a genuine dispute on the question of whether his firing was pretextual because he identified a similarly situated Caucasian employee whom the defendants treated more favorably. "At the pretext stage, 'the test for determining whether employees are similarly situated to a plaintiff is a rigorous one.'" *Bone*, 686 F.3d at 956 (quoting *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 853 (8th Cir. 2005), *abrogated on other grounds by Torgerson*, 643 F.3d at 1043). To succeed in his claim, Henry must show that he and the employee outside of his protected group were "similarly situated in all relevant respects." *Id.* (quoting *Rodgers*, 417 F.3d at 853).

Henry contends that Tyner is similarly situated because both he and Tyner were suspected of selling contraband to inmates, and he claims that Tyner was treated more favorably because Tyner was not terminated. However, Henry has introduced no evidence showing that Tyner failed a CVSA test or that he escorted an inmate into a prohibited area, the conduct Burl relied on when he decided to terminate Henry. *See Johnson*, 424 F.3d at 811 (holding that plaintiff was not similarly situated to co-workers when he "identifie[d] no evidence" that the employer believed that co-workers engaged in similar misconduct).

Henry alternatively claims that Tyner was treated more favorably because he was not required to submit to a CVSA test after being suspected of selling contraband to inmates. Under this theory, the defendants discriminated against Henry by investigating him more thoroughly than a similarly situated Caucasian employee. Thus, even if the defendants ultimately had sufficient reason to terminate Henry based

on his failing a CVSA test, Henry claims that his firing was still pretextual because the defendants discovered the evidence justifying his termination based on a racially-motivated investigation. This claim also fails. There is no evidence in the record concerning whether or not Tyner—or the two other employees assigned to the bus where contraband was found—were required to take CVSA tests. Further, even if Henry could establish that Tyner was treated more leniently, it would not support Henry's claim that the alleged lenience stemmed from any racial bias. One of the other employees suspected of storing contraband on Tyner's assigned bus was African-American. Because Henry does not argue that Tyner was treated any more leniently than the similarly situated African-American employee, he cannot establish that any alleged lenience toward Tyner was motivated by racial bias. *See Bone*, 686 F.3d at 957 (rejecting plaintiff's comparator evidence because some of the employees receiving allegedly favorable treatment were part of same protected classes as plaintiff); *Hitt v. Harsco Corp.*, 356 F.3d 920, 925 (8th Cir. 2004) (same).

In contrast, the defendants have provided evidence that a similarly situated Caucasian employee was subject to the same treatment as Henry. Internal Affairs investigated a Caucasian employee who was suspected of selling contraband to inmates. Burl fired this employee after he failed a CVSA test in which he denied these allegations. Thus, the only evidence in the record concerning a similarly situated Caucasian employee undermines Henry's claim that his termination was motivated by race. *See Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 639-40 (7th Cir. 2001) (rejecting claim that African-American plaintiff's termination was motivated by race when numerous similarly situated Caucasian employees also were fired). Henry's attempt to show pretext through comparator evidence fails.

Henry also claims that the defendants' shifting explanations for terminating his employment give rise to an inference of pretext. *See, e.g., Young v. Warner-Jenkinson Co., Inc.*, 152 F.3d 1018, 1022 (8th Cir. 1998) (holding that substantial change in employer's explanation for decision to terminate employee

supported an inference of pretext).  Henry suggests that the reason for his termination shifted because the State Employee Grievance Appeal Panel upheld Burl's decision to fire Henry on only one of the three grounds that Burl had provided.  That the appeal panel—whose members are not defendants in this action—rejected Burl's determination as to two of Henry's alleged violations does not indicate that Burl or the other defendants shifted their explanations.  Instead, Burl's explanation has been consistent, and Henry thus cannot establish pretext based on a shifting explanation. *See E.E.O.C. v. Trans States Airlines, Inc.*, 462 F.3d 987, 995 (8th Cir. 2006) (holding that evidence did not support inference of pretext when employer's explanation for terminating employee remained consistent).

Because Henry did not create a genuine issue of material fact as to whether the defendants' legitimate, nondiscriminatory reason for terminating his employment was merely a pretext for intentional race discrimination, the district court did not err by granting summary judgment in favor of defendants. *See Bone*, 686 F.3d at 958.

III.

For the foregoing reasons, we affirm the judgment of the district court.

_____