JERRY E. SMITH, Circuit Judge,
dissenting:
Kirby Tate is a three-time convicted drug dealer who state prison officials believe is the leader of a prison gang known primarily for drug distribution.[1] They accordingly confined him in a super-maximum security prison unit, because he posed a security threat. Tate argues that the prison provided insufficient process in making that determination, but he did not proffer any evidence supporting his allegations before the district court granted summary judgment.
Giving Tate a mulligan, the majority (1) distorts or ignores crucial facts, (2) significantly muddles our caselaw concerning the standard for reviewing the denial of a motion to reconsider a judgment, (3) orders the district court to consider a claim that Tate did not preserve on appeal and that was not mentioned at oral argument, and (4) suggests that it is appropriate for a district court to review the substantive evidence supporting a state prison’s classification determination in adjudicating a procedural due process claim. Moreover, the majority does so after having turned *726 oral argument into a meandering, eighty-minute evidentiary hearing[2] involving un-sworn, hearsay testimony by each party’s counsel. I respectfully dissent and would affirm the summary judgment and the denial of the request to reopen.
I.
Tate sued the Mississippi Department of Corrections (“MDOC”) and many of its officials in June 2008, via a complaint signed only by his lawyer, which the majority erroneously and misleadingly refers to as “Tate’s affidavit”. R.28. Four months passed, and Tate did not present any evidence — not one iota — supporting his allegations. The discovery deadline expired in October 2008. Two months later, with a bare record, the MDOC moved for summary judgment on Tate’s claims. R.188-89. Two months after that, with the record still bare, the magistrate judge issued a report in which he noted that Tate had not presented any proper summary judgment evidence because he had never signed his complaint and had not submitted anything else to support his allegations.[3]
Although Tate’s attorney, Sylvia Owen, had signed the complaint and declared that it was true and correct under penalty of perjury, a verified complaint signed only by an attorney who, like Owen, lacks personal knowledge of a matter, is not competent summary judgment evidence, but only hearsay.[4] Accordingly, the magistrate *727 judge properly ignored it and recommended summary judgment.
Owen stated at oral argument that the reason the complaint was not signed by Tate was that prison officials had prevented her from passing the document to him during visitation. She says she complained to the MDOC, “all the way to the warden,” to no avail. But, aside from Tate’s affidavit filed after the district court had granted summary judgment, R.873, there is no indication of any of that in the record, even though the record contains dozens of pages of communications between Owen and the MDOC that Owen submitted. See R.55-93.
If Tate’s and Owen’s assertions were true, one would expect them to have uttered those claims around the time the complaint was filed, not after the district court had granted summary judgment over eight months later. Indeed, even after the magistrate judge recommended summary judgment because Tate had not signed his complaint and there was nothing else to support his allegations, Tate and Owen still did not mention that the prison had obstructed Tate’s attempt to sign it.[5] We should not rely on Tate’s and Owen’s self-serving, post hoc explanations to force the district court to grant reconsideration. Yet the majority does precisely that.
Indeed, the majority goes further by making the unsupportable contention that Tate’s complaint itself alleged that the MDOC had prevented him from signing it. That is physically and temporally impossible. According to Owen’s claims at oral argument, she brought the complaint to the prison, where she sat down across from Tate separated by glass and could not hand the complaint to him because prison officials would not let her, so she signed it herself then and there. The complaint could not have related those events, because, if they occurred, it must have been after it was written.
What the complaint alleged was merely that prison officials had “censored confidential attorney-client mail, including this Complaint.” R.38 (emphasis added). Moreover, the complaint explained the alleged “censorfing]” of prison mail that the majority relies on, and it has nothing to do with preventing Tate from signing the complaint: When Tate attempted to mail the complaint to his attorney (unsigned, apparently), he “instructed the [prison] not to open it or make a copy. However, they obviously did so anyway because they returned a copy to [Tate].” R.38 n. 4. Alleging that a prison read a high-security inmate’s mail before mailing it and gave the inmate a copy does not equate to alleging that the prison obstructed a client’s attempt to sign it.[6] Thus, despite the majority’s claims, the record does not show that the MDOC prevented Tate from signing his complaint before the magistrate judge excluded it from evidence.
What the record does show — and the majority omits — is that Owen mailed an affidavit to Tate on February 26, 2009, a day after the magistrate judge issued his *728 report recommending summary judgment.[7] In other words, Owen was not diligently attempting to get Tate’s complaint signed for months; it was not until the deadline that Owen realized for the first time that her client needed to sign something. That is not at all that surprising, given that she is an estate planning attorney who says she is representing Tate as a family friend, not a litigator with trial expertise. Owen’s inexperience, not prison interference, is the reason Tate’s complaint had not been signed over the course of eight months.
After Owen sent Tate the affidavit in February 2009, she was unsuccessful in obtaining a signed copy from him, so she sought a ten-day extension, allegedly because “prison officials refused to allow [Tate] to have it notarized,” and “[Tate’s] mental state after being locked down for over a year appears to be hindering his ability to follow instructions and assist counsel in the production of this case.” R.266.[8] That Owen asked for only a ten-day extension casts further doubt on her allegations of prison malfeasance, because if the MDOC had really been consistently denying her client access to her documents for almost a year by that point, one would think she would have asked for more than an extra ten days. Regardless, the district court granted Owen precisely the ten-day extension she requested. R.269.
When the deadline expired, Owen filed objections to the magistrate judge’s report without any accompanying evidence. In her brief, she stated that “Tate will miss the ten day deadline to file his affidavit” because “he was not allowed to have [it] notarized.” R.296. She did not explain why she had failed to submit any other evidence. The next day, however, she filed a notice of technical difficulty explaining that she could not submit Tate’s exhibits because of a “scanner malfunction,” but that “[t]he problem will be corrected promptly.” R.ll, 328. She did not request an extension of her deadline to submit evidence. At that point, it would have appeared to the district court that Owen had every document she required but only needed a few hours or an extra day to submit them.
Five days passed, however, with silence from Tate and his counsel. The district court, its deadline now having been flouted, pulled the trigger and granted'summary judgment to the MDOC. R.331-32. Given that Owen did not request an extension of her already-extended deadline, and that her reason for the delay was a “scanner malfunction” that continued for five days, it was not unreasonable for the district court to do so.
Immediately after the court entered summary judgment, on March 30, 2009, Owen filed a Federal Rule of Civil Procedure 59(e) motion to reopen the case on the ground that, “[d]ue to a scanner malfunction and prison legal mail[,] it was not possible to file” her exhibits on time. R.333-34. Along with that motion, she submitted a number of documents, including affidavits from Tate’s brother and wife, signed February 25 and 28, respectively, and various public documents relating to the procedures the MDOC had provided Tate. R.335-59. Any of those documents could have been filed months earlier and *729 have nothing to do with the prison’s alleged interference with Owen’s communications with her client, but the majority holds that the district court must consider them anyway.
Along with her motion to reopen, Owen filed a motion for additional time to obtain Tate’s affidavit on the ground that the prison had “interferfed] with legal mail when [Tate] attempted to make the necessary revisions to his Affidavit.” R.360. She also submitted an untimely affidavit of her own, dated September 2008, which the court rejected because she had not signed it. R.ll, 366-71. Finally, in April 2009, before the court could rule on the motion for additional time, Owen submitted another rule 59(e) motion to reopen, along with various documents, including another copy of Tate’s complaint and an affidavit, both of which Tate finally signed and declared true and correct under penalty of perjury. R.372-415. The district court then declined to reopen, without considering the additional materials, because the “same arguments” were before the magistrate judge when he issued his report and recommendation. R.416.
II.
Where, as here, the district court did “not expressly or impliedly refer to the materials [submitted with a rule 59(e) motion] in its ruling,” we review its denial of the motion for abuse of discretion. Templet v. HydroChem, Inc., 367 F.3d 473, 477 (5th Cir.2004). The majority cites Garcia v. Woman’s Hospital of Texas, 97 F.3d 810, 814 (5th Cir.1996), for the proposition that a decision not to reopen “will not be disturbed in the absence of a showing that it has worked an injustice in the cause.” The majority concludes, however, that “because an injustice has been suggested” (emphasis added), not shown, the district court abused its discretion. Not only does the majority ignore the very standard it cites but, by its reasoning, no judgment would ever be final.
We do not have a freewheeling “possible injustice” standard for reviewing denials of motions to reopen, and it will cause chaos in the district courts if we adopt one. To the contrary, because granting rule 59(e) relief to reopen a final judgment is an “extraordinary remedy” that should be “used sparingly,” id. at 479 (citations omitted), we reverse a denial of a rule 59(e) motion only to correct manifest errors of law or fact or because of newly discovered evidence. Id. (citing Waltman v. Int’l Paper Co., 875 F.2d 468, 473 (5th Cir.1989)).[9] Those are the specific kinds of “injustice” that we have held are grounds for reversing a denial of a rule 59(e) motion. Such a motion “is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment.” Id.
An unexcused failure to present evidence available at the time of summary judgment is a valid reason for denying a motion to reopen. Id. (citing Russ v. Int’l Paper Co., 943 F.2d 589, 593 (5th Cir.1991)). For example, in Templet the plaintiffs did not provide expert evidence to the district court before summary judgment because, by the time they obtained the evidence, the deadline for providing such evidence had expired. Id. at 478. The plaintiffs argued, in their motion for reconsideration, that they could not have produced the evidence without violating the scheduling order, but the district court denied the motion to reconsider because plaintiffs could have asked for a continuance or a rescheduling of deadlines before *730 summary judgment. Id. at 479. We held that the court did not abuse its discretion. Id. at 479-80.
The same is true here. Tate does not and cannot allege that the district court manifestly misconstrued the law or facts when it granted summary judgment, because the record was essentially bare. There were thus no facts to misconstrue, and without facts, there was no law that could help Tate.[10] Moreover, Tate was obviously aware of the possibility that his testimony could be used as evidence, so it was not newly discovered.[11]
It is true that Tate alleged that the MDOC prevented him from getting the affidavit notarized, but if he did not believe he could submit evidence on time, it was his responsibility to ask for an extension before summary judgment, as he had once already done.[12] Instead, he said, through counsel, that he would submit all his exhibits as soon as a scanner malfunction was promptly corrected. The district court patiently waited for five days, and when still nothing was forthcoming, it entered a final judgment. Because it was Tate’s own fault that the court decided the case, the court was entitled to deny his rule 59(e) motion for reconsideration.
In addition, we have no information about the extent, nature, or impropriety of the MDOC’s alleged interference. We have nothing more than an unelaborated assertion of “interference” with legal mail causing “delay.” R.373. The majority thus reopens the case, as it concedes, based only on the possibility that injustice might have occurred. That will open the door to any number of plaintiffs’ seeking to reopen cases based on unsupported allegations of injustice when the case does not go their way, and this will significantly increase costs on both the court system and parties. It cannot be squared with the notion that reconsideration of a judgment is an “extraordinary remedy that should be used sparingly.” Templet, 367 F.3d at 479 (citations omitted).
Moreover, the majority does not consider that Tate’s claim of interference is questionable given that, as discussed in part I, Tate and Owen now say that the prison interfered with Tate’s attempts to sign his original complaint, yet they did not see fit to mention that salient fact over the course of eight months until after summary judgment had been granted. That is not to say Tate and Owen necessarily lied, but only to reason that the district court did not abuse *731 its discretion by not granting the “extraordinary remedy” of reopening the case.
III.
Just as troubling as the majority’s legal analysis, however, is that it reaches its conclusion by seizing on the explanations that Owen gave at our eighty-minute “evi-dentiary hearing,” while ignoring the MDOC’s attorney’s claims that Owen’s post hoe allegations were false. Although the majority pays lip service to the abuse-of-discretion standard for motions to reopen, it essentially reviews the district court’s decision de novo by putting its own credibility determinations ahead of the district court’s conclusions. There is no law that I am aware of that gives us the authority to decide that the district court got it wrong and to reach that conclusion by turning oral argument into a fact-gathering excursion, then basing our ruling on our own assessment of each party’s lawyer’s credibility at argument. If the practice of retrying cases at oral argument becomes widespread, we will have mostly done away with the notion of deference to the district courts, and the courts will incur considerable expense by having to construct witness stands in appellate courtrooms.
IV.
The majority also errs by inexplicably resurrecting a claim that Tate had waived. The majority instructs the district court to review Tate’s aceess-to-courts claim even though that claim was given only a few lines in the “statement of the case” section of Tate’s opening brief, without citation to any authority. Failing to cite any authority in even a one-page argument constitutes waiver. L & A Contracting Co. v. S. Concrete Servs., 17 F.3d 106, 113 (5th Cir. 1994). Indeed, we did not discuss the issue at oral argument and did not ask the parties to address it in their supplemental briefing. The notion that the MDOC might be prejudiced by the majority’s eleventh-hour action apparently does not concern the majority in any way.
V.
The majority drops a footnote, near the end of its opinion, suggesting that the district court undertake an in camera review of the MDOC’s evidence against Tate, because the MDOC stated that it was “fully amenable” to doing so. That creates the impression that this case turns on whether Tate was properly classified as a gang leader. It does not. The majority appears to have forgotten that Tate’s claim is one of procedural due process — ie., whether the MDOC has followed constitutionally adequate procedures in classifying Tate — not a question of whether the MDOC had adequate substantive ground to place him in Unit 32. No law exists for the proposition that federal courts may sit as tribunals in review of state prisons’ substantive decisions concerning who should or should not be placed in super-maximum-security custody. Whether the MDOC made the right decision in moving Tate into Unit 32 is entirely irrelevant to whether his due process rights were violated.
VI.
The majority opinion does have two virtues. The first is that, as an unpublished decision, it is non-preeedential, 5th Cir. R. 47.5, so future panels are entitled to ignore it. The second is that the majority does not grant or deny summary judgment but remands to the district court to consider any issues it deems appropriate.
The district court should inquire whether Tate’s claim is moot. The MDOC appears to have closed down Unit 32 at Parchman and transferred Tate to a non-supermax prison while this appeal was pending. Mississippi seemingly does not *732 have any other super-maximum security units. Voluntary cessation of a challenged practice moots a case if it is “absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.” [13]
I respectfully dissent.

. The majority seeks to buttress its opinion by dredging up facts to cast doubt on Tate's most recent conviction, even though those facts are utterly irrelevant to this appeal concerning prison conditions, and despite the fact that the conviction was upheld by the Mississippi Supreme Court and on habeas corpus review (only a challenge to the length of Tate’s three-strikes-law sentence remains). The majority's cherry-picking of irrelevant but sympathetic facts merely gives the impression — not unwarranted — that its opinion is motivated more by misplaced sympathy for a criminal than by careful legal analysis.

. Even the most complex and important cases in this circuit usually receive, at most, forty minutes of oral argument. A very limited number, including en banc cases, receive an hour. This frivolous appeal was the exception and was given about double the customary time.

. See R.262 (“Tate’s complaint asserts that Tate is not a member of any gang, much less a gang leader. But his complaint, while containing language that it is under oath, is signed not by Tate, but his counsel.... Therefore Tate has failed to provide admissible evidence....”). The majority makes much of the fact that the magistrate judge addressed the evidentiary value of Tate's complaint sua sponte, but he had the authority to do so. See Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("[Djistrict courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence.”). Even assuming that Tate was not on notice about the fact that he had no competent summary judgment evidence to support his claims eight months after he filed his complaint, he had about a month after the magistrate judge’s report to sign his complaint, but did not do so, and, as will be discussed, it was his own fault that the district court granted summary judgment.

. See, e.g., Fed.R.Civ.P. 56(c)(4) (“An affidavit or declaration used to support or oppose a motion must be made on personal knowledge. ... ”); Wells Fargo Home Mortg., Inc. v. Lindquist, 592 F.3d 838, 845-46 (8th Cir.2010) (holding that district court properly ignored attorney’s affidavit because he did not assert personal knowledge of the transaction); Brainard v. Am. Skandia Life Assur. Corp., 432 F.3d 655, 667 (6th Cir.2005) (holding attorney’s affidavit that does nothing more than assemble properly authenticated evidence is still not admissible, because it is not based on personal knowledge); United States v. Peterson, 414 F.3d 825, 827 (7th Cir.2005) ("The lawyer’s affidavit, being hearsay, is no evidence at all.”); Albright v. FDIC, 1994 WL 109047 at *4, 1994 U.S.App. LEXIS 6206, at *16-*17 (1st Cir. Apr. 1, 1994) (unpublished) (holding that attorney's affidavit was not competent evidence of his clients' agreement or communications with the defendants, because it was not based on personal knowledge); Suit v. Ellis, 282 F.2d 145, 147 n. 2 (5th Cir.1960) (“The motion for new trial is of little assistance to the petitioner except as a pleading to be considered by the Court, because the affidavit was made by the attorney and not by the petitioner, and because it failed to contain any showing that the attorney had any personal knowledge of the facts alleged.”); 11 James W. Moore et al„ Moore’s Federal Practice § 56.94[7][a], at 56-245 (3d ed.2011) (stating that, in opposing summary judgment, "an attorney’s affidavit or declaration is subject to the same personal knowl *727 edge requirement as any other affidavit or declaration_”).

. When Owen was asked at oral argument whether she mentioned to the magistrate judge that prison officials had prevented her from passing the complaint to Tate at visitation, she said, "I believe that’s in my affidavit.” But Owen’s affidavit, dated September 5, 2008, does not so allege. See R.366-71. Moreover, in what appears to be a pattern, Owen’s affidavit is not competent evidence, because she never signed it. R.ll, 371.

. According to the MDOC, it needed to monitor Tate’s communications with Owen because they were in a physical relationship together, so she posed a security risk. There is no evidence in the record to support that claim, but the district court may wish to inquire into the matter on remand.

. See R.266 ("Magistrate Jerry Davis filed his Report and Recommendations in the above referenced action on February 25, 2009.... Plaintiff’s counsel mailed an affidavit to Plaintiff on February 26, 2009.... ”).

. Given that Tate's affidavit did not need to be notarized, only signed and declared true and correct under penalty of perjury, see DIRECTV, Inc. v. Budden, 420 F.3d 521, 530-31 (5th Cir.2005) (citing 28 U.S.C. § 1746 (2006)), even if Owen's allegations were true, one can question whether the prison materially hindered her from obtaining Tate’s affidavit.

. We may also do so when there has been an intervening change in the controlling law, Schiller v. Physicians Res. Grp., Inc., 342 F.3d 563, 567-68 (5th Cir.2003), but that is not the situation here.

. Irrespective of whether Tate both possesses a liberty interest and was denied due process under Wilkinson v. Austin, 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)— issues that neither the majority nor I address — Tate did not show — before the district court granted summary judgment — any competent evidence of either a liberty interest or a due process violation, let alone sufficient evidence to satisfy his burden to defeat summary judgment. See Duffie v. United States, 600 F.3d 362, 371 (5th Cir.2010) ("[Tjhe nonmov-ing party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.”).

. See Templet, 367 F.3d at 479 (holding evidence was not newly discovered because "the underlying facts were well within the [party’s] knowledge prior to the district court's entry of judgment”).

.See Fanning v. Metro. Transit Auth., 141 Fed.Appx. 311, 314 (5th Cir.2005) ("[0]ur court has foreclosed a party’s contention on appeal that it had inadequate time to marshal evidence to defend against summary judgment when the party did not seek Rule 56(f) [now rule 56(d)] relief before the summary judgment ruling. A Rule 56[ (d) ] motion [for continuance], not [a rule 59(e) motion] for reconsideration, is the proper remedy for a party claiming summary judgment is inappropriate because of inadequate discovery.” (citing Potter v. Delta Air Lines, Inc., 98 F.3d 881, 887 (5th Cir.1996))).

. Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1, 551 U.S. 701, 719, 127 S.Ct. 2738, 168 L.Ed.2d 508 (2007) (quoting Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 189, 120 S.Ct 693, 145 L.Ed.2d 610 (2000)).